THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THEODORE GIBSON, Defendant-Appellant.

Second District    No. 80-264

Opinion filed August 24, 1981.

Mary Robinson and Josette Skelnick, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara Preiner, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

After a trial by jury, the defendant, Theodore Gibson, was found guilty of the unlawful use of a credit card in violation of section 8(i) of the Illinois Credit Card Act (Ill. Rev. Stat. 1979, ch. 121½, par. 608(i)). Prior to sentencing, the defendant informed the court that he wished to plead guilty to a pending charge of forgery. After accepting the defendant's guilty plea, the court sentenced him to concurrent terms of probation for one year plus 30 days in the Du Page County jail. This sentence was for both offenses, the unlawful use of a credit card and the forgery. The defendant appeals from his conviction of the unlawful use of a credit card.

The defendant's conviction stems from his attempt to purchase two

jackets from the Sears, Roebuck & Co. store in Oakbrook, Illinois, by using, without permission, a Sears credit card belonging to Roger Burgess. Mr. Burgess had lost a wallet containing the credit card a few days earlier. Testimony adduced by the State established that the defendant brought the two jackets, valued at over $150, to the cashier's counter in the men's clothing department and gave the credit card to the manager of the department. He then expressed his intent to use it for the purchase of the two jackets. The manager wrote the requisite sales slip. Then, because the amount of the sale was over the floor limit for such purchases, he called the central office for approval. Upon direction from the central office, the manager contacted the security department. The defendant and another individual then fled the premises. At trial, the defendant contended that he was not present in the Sears store at the time in question.

On appeal, the defendant's sole contention is that the statutory section under which he was convicted (Ill. Rev. Stat. 1979, ch. 121½, par. 608(i)) contains no penalty provision and consequently is a nullity. Accordingly, he asserts that his conviction for the unlawful use of a credit card must be vacated.

We note initially that neither party has directed us to a case on point, and our independent research has not discovered any. Apparently, the issue raised on review presents this court with a case of first impression in Illinois.

In relevant part, section 8 of the Illinois Credit Card Act provides:

"A person who, with intent to defraud either the issuer, or a person providing money, goods, property, services or anything else of value, or any other person, (i) uses, for the purposes of obtaining money, goods, property, services or anything else of value a credit card obtained or retained in violation of this Act or without the cardholder's consent, or a credit card which he knows is counterfeited, or forged, or expired, or revoked, or (ii) obtains money, goods, property, services or anything else of value by representing without the consent of the cardholder that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, is guilty of a Class A misdemeanor if the value of all money, goods, property, services and other things of value *obtained* in violation of this Section does not exceed $150 in any 6-month period; and is guilty of a Class 4 felony if such value exceeds $150 in any 6-month period." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 121½, par. 608.

It is clear that the statute in question describes two forms of prohibited conduct. The conduct proscribed in section 8(i) involves the mere use of a credit card, regardless of whether goods or property are actually obtained, whereas the conduct prohibited in section 8(ii) pertains

to the actual obtaining of goods or property. (See *People v. Koonce* (1978), 65 Ill. App. 3d 86, 87.) We point out that section 8 incorporates, albeit in reworded form, the provisions of former section 17—1(e)(1) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1971, ch. 38, par. 17—1(e)(1) (repealed October 1, 1973)), which described the offense of deceptive practices committed by the use of a credit card. (See *People v. Dismore* (1975), 33 Ill. App. 3d 495, 498-99.) Former section 17—1(e)(1) provided that it was an offense for a person to obtain or attempt to obtain property by the use of a credit card which was issued to another, without the owner's consent. The penalty provision of that section stated that a person convicted of deceptive practices involving a credit card shall be punished by imprisonment where the value of the property obtained or attempted to be obtained exceeded $150.

The thrust or gravamen of the defendant's argument on appeal is that the penalty provision contained in section 8 of the Illinois Credit Card Act applies only in the event that goods are actually "obtained" by the unlawful use of a credit card. The defendant contends that the statute was intended to penalize only conduct resulting in the actual obtaining of goods. In support of this contention, he emphasizes that, in setting forth the misdemeanor penalty, the penalty provision refers solely to the value of goods "obtained" and does not expressly include the value of goods sought to be obtained, but not actually obtained by the use of a credit card. The defendant correctly states the proposition of law that a statute containing prohibitive language without also providing for a penalty is a nullity. *People v. Kimmons* (1979), 79 Ill. App. 3d 601, 602; *People v. Natoli* (1979), 70 Ill. App. 3d 131, 140; *People v. Graf* (1968), 93 Ill. App. 2d 43, 48, 50.

■■■ We view the task before us as one involving the construction or the interpretation of the statute at issue. Certain well-established principles exist to guide us in this endeavor. The prime consideration or cardinal rule in construing a statutory enactment is to ascertain and give effect to the intent of the legislature. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543; *People ex rel. Barrett v. Anderson* (1947), 398 Ill. 480, 485-86; *People v. Floom* (1977), 52 Ill. App. 3d 971, 974; *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1977), 52 Ill. App. 3d 90, 94, *cert. denied* (1978), 435 U.S. 970, 56 L. Ed. 2d 61, 98 S. Ct. 1610.) While the legislative intent is sought primarily from the language used in the statute (*Bee Jay's Truck Stop, Inc. v. Department of Revenue*), we may also look to the statutory objective and the evils sought to be remedied (*People ex rel. Barrett v. Anderson*, at 486; *People v. Hubble* (1980), 81 Ill. App. 3d 560, 563; *People v. Floom*, at 975; *People v. Spencer* (1971), 131 Ill. App. 2d 551, 553) and then arrive at a common-sense construction though it may qualify the broad language of the statute (*People v. Hubble*). Furthermore, the courts

are not always bound by the literal meaning of a statutory enactment, particularly if a literal construction would necessitate an absurd result which would defeat the obvious intent of the legislature. (*People v. Hubble.*) When necessary to achieve the goal of effectuating the legislative purpose, a court may alter, supply or modify words and correct obvious mistakes. *People v. Garrison* (1980), 82 Ill. 2d 444, 455; see *People v. Bratcher*; *People v. Anderson*; *People v. Spencer.*

■■ While courts are generally cautious about adding words to a statute, they will read into the meaning of a statutory provision a qualifying or expanding expression plainly implied by the general context of the enactment, which has been palpably omitted and which is essential to prevent the legislative purpose from failing in one of its important aspects. (*People ex rel. Barrett v. Anderson*, at 485; *R.E. Joos Excavating Co. v. Pollution Control Board* (1978), 58 Ill. App. 3d 309, 313.) Furthermore, the omission or addition of words in a new statute does not necessarily indicate a legislative intent to change the effect of a prior statute, and a change of construction occurs only when the intent of the legislature or the language used in the new statute plainly requires it. (*People v. Nunn* (1979), 77 Ill. 2d 243, 249.) Lastly, while it is the rule that penal statutes are to be strictly construed in favor of the defendant, the courts will not construe them so rigidly as to defeat the legislative intent. *People v. Bratcher*, at 543.

■■ We begin our analysis by noting that the Illinois Credit Card Act (Act) (Ill. Rev. Stat. 1979, ch. 121½, par. 601 *et seq.*) is a comprehensive statute governing the wrongful use or disposition of credit cards. Our reading of the Act reveals that the legislature sought to proscribe and punish a wide variety of unlawful conduct which has recently occurred with the increased use of and reliance on credit cards. We note that both section 8 of the Act and the former section 17—1(e)(1) of the Code set forth two distinct offenses: (1) the use of a credit card for the purpose of obtaining goods, regardless of whether the goods are obtained, and (2) the actual obtaining of such goods by misrepresenting that one is a valid holder of a credit card. We believe section 8(i) indicates that the legislature foresaw the situation, as in the case at bar, in which a person would be thwarted in his attempt to obtain retail merchandise by using a credit card without the cardholder's consent. In this regard, the legislative purpose behind section 8(i) is consistent with that underlying former section 17—1(e)(1) of the Code, which proscribed any attempt to obtain property by the use of a credit card without the cardholder's consent or permission.

While we recognize, as the defendant points out, that the penalty provision of section 8 employs the word "obtained" and does not expressly refer to the value of goods attempted or sought to be obtained, we are not persuaded that the legislature intended to limit the application

of the penalty provision to situations where the unlawful use of a credit card is detected only after the goods have been obtained. To accept the argument that the legislature intended to punish only those who actually obtain goods while not penalizing those who unlawfully use a credit card without actually obtaining the property would lead to an illogical and virtually incredible result. It would be absurd and incongruous to conclude that the legislature sought only to punish one class of offender. To construe the penalty provision of the statute in this manner would be to disrupt a major purpose of the Act, and to ignore the intent of the legislature in enacting the statute.

■■■ Applying the rules of statutory construction previously set forth, we determine that, while the statute in question is inartfully, imprecisely, and incompletely phrased, the clear intendment of the legislature was that the penalty provision of section 8 should apply to situations where, as here, the accused was unsuccessful in his attempt to purchase goods or property by the unlawful use of a credit card. We are compelled to conclude that the failure to include additional language such as "sought to be obtained" or "attempted to be obtained" or words of similar import was a legislative oversight, inadvertent omission, or mistake, particularly given the fact that both types of offense proscribed in section 8 are included as part of a single sentence along with the penalty provision. We further believe that, although the legislature inadvertently failed to include this additional language, such words are contained in the statute by fair implication. Accordingly, we determine that the words inadvertently omitted may be supplied to effectuate the legislative purpose. (*Cf. People v. Spencer* (1971), 131 Ill. App. 2d 551, 553.) We note also that some significance may be attached to the fact that section 8 has previously been considered on appeal in *People v. Koonce* (1978), 65 Ill. App. 3d 86, 87 and *People v. Heinz* (1980), 87 Ill. App. 3d 1, 2. In both cases, as in this case, the defendant was not successful in obtaining any money, goods or anything else of value, and yet the issue prescribed here was neither raised nor considered on appeal.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.