**STATE**

v.

**Ralph GONSALVES, Jr.**

No. 83–261–C.A.

Supreme Court of Rhode Island.

May 1, 1984.

Dennis J. Roberts II, Atty. Gen., Brian Van Couyghen, Sp. Asst. Atty. Gen., Providence, for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief—Appellate Div., Paula Rosin, Public Defender, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Ralph Gonsalves, Jr., was charged by information with the fraudulent use of a credit card, in violation of G.L.1956 (1981 Reenactment) § 11–49–4. The case was tried before a justice of the Superior Court, sitting with a jury, which returned a verdict of guilty against the defendant. His motion for a new trial was denied, and he is now before us on appeal.

The record discloses that on December 29, 1980, defendant was a customer in the Casual Male Clothing Store in East Providence. The defendant, then nineteen years of age, approached the counter to purchase a pair of jeans, presenting a credit card and a license that indicated that he was approximately forty-five years of age. After this discrepancy and an apparent alteration of the credit card were noticed, a check was made to determine the card's validity. The defendant thereupon proceeded to another register where he paid for the purchase in cash and then immediately left the store. When it was learned that the card had expired, an unsuccessful attempt was made to follow defendant.

The defendant's father, Ralph Gonsalves, Sr., testified that he had given the credit card, which he knew to be altered, to one Ronald Thomas. Mr. Gonsalves further stated that he was present at the Casual Male Store on the day in question and that it was Thomas, and not his son, who had attempted to use the card.

The defendant testified that at the time of the incident he was rehearsing with his band and that he had not attempted to use the credit card.

A trial date was set for September 27, 1981. On September 23, four days before trial and prior to the impaneling of the jury, defendant's attorney filed a motion to withdraw from the case. Defense counsel informed the trial justice that he represented the individual who had actually committed the crime for which defendant was being tried, and that such dual representation constituted a conflict of interest. Without addressing the merits of the motion, the trial justice dismissed it on the ground of untimeliness.

On appeal, defendant raises several issues. However, due to our disposition of two of the issues submitted, it will be unnecessary to address all the questions raised. The issues we will consider are: (1) whether the trial justice erred in denying defendant's motion for judgment of acquittal; and (2) whether the trial justice was in error in denying defense counsel's motion to withdraw on the grounds of a conflict of interest.

I

The defendant contends that because he paid cash for the jeans, the evidence supported only the conclusion that he merely attempted to fraudulently use a credit card. The defendant argues that the language of § 11–49–4 is unambiguous and conveys a clear and sensible meaning. When each word of the statute is given its "plain and ordinary meaning," this type of conduct is not covered. Rather, it is the intent of the statute to cover only the situation whereby a defendant actually receives goods by virtue of the fraudulent use of a credit card, and not the mere attempt to do so. The defendant furthermore impliedly argues that because the statute does not contain a penalty for the attempted fraudulent use of a credit card, such action does not constitute a violation of the statute. We disagree with defendant's reading of § 11–49–4.

Section 11–49–4 provides in part:

"A person who, with intent to defraud the issuer or a person or organization providing money, goods, services or anything else of value or any other person, uses, for the purpose of obtaining money, goods, services or anything else of value, a credit card obtained or retained in violation of this law or a credit card which he knows is forged, expired or revoked *or* who obtains money, goods, services or anything else of value by representing, without the consent of the cardholder, that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, violates this subsection and is subject to the penalties set forth in subsection (1) of § 11–49–10, if the value of all moneys, goods, services and other things of value obtained in violation of this subsection does not exceed one hundred dollars ($100) in any six (6) month period. The violator is subject to the penalties set forth in subsection (2) of § 11–49–10, if such value does exceed one hundred dollars ($100) in any six (6) month period." (Emphasis added.)

■ We must be guided initially by the basic principle of construction which states that statutes should be given their plain and ordinary meaning. *Roadway Express, Inc. v. Rhode Island Commission for Human Rights*, R.I., 416 A.2d 673, 674 (1980); *State v. Healy*, R.I., 410 A.2d 432, 434 (1980); *Lynch v. King*, 120 R.I. 868, 873, 391 A.2d 117, 120 (1978). We must in construing a statute ascertain and give effect to the intent of the Legislature. In ascertaining that meaning, we should "give

effect to all parts of the statute, if reasonably possible, in keeping with its declared purpose." *Rhode Island Chamber of Commerce v. Hackett*, R.I., 411 A.2d 300, 303 (1980).

■ Applying these principles, we find that the provisions of § 11–49–4 proscribe two forms of conduct: (a) conduct involving mere use of the card for the purpose of obtaining goods, regardless of whether goods are actually obtained, or (b) conduct on the part of an individual who actually obtains goods by falsely representing himself to be the cardholder. However, in setting the sanction for violation of the statute, the penalty provision refers solely to the value of goods actually obtained, with no reference to goods sought to be obtained. Recognizing the principle of law which holds that a statute containing prohibitive language without providing for a penalty is a nullity, we therefore take the view that the task before us is one of statutory construction of an ambiguous statute. *See People v. Gibson*, 99 Ill. App.3d 616, 619, 55 Ill.Dec. 24, 26, 425 N.E.2d 1197, 1199 (1981).

■ Although legislative intent is primarily sought from the language used in the statute, we must look to the statutory purpose. This court should not adopt a construction that would defeat the evident purpose of the statute. *Coletta v. State*, 106 R.I. 764, 770, 263 A.2d 681, 684 (1970). Although penal statutes are to be strictly construed, they should not be interpreted in a manner that would thwart a clear legislative intent. *State v. Dussault*, 121 R.I. 751, 754, 403 A.2d 244, 246 (1979). Moreover, we will not attribute to the Legislature a meaningless or absurd result. *Beaudoin v. Petit*, R.I., 409 A.2d 536, 540 (1979); *Kingsley v. Miller*, 120 R.I. 372, 376, 388 A.2d 357, 360 (1978).

■ It is clear from a reading of the statute that the Legislature intended to prohibit the unlawful use of a credit card with intent to defraud even where that attempt is unsuccessful. The statute falls within the chapter entitled "Credit Card Crime Act," the obvious purpose of which is to impose criminal sanctions upon those who engage in the unauthorized use of credit cards. Section 11–49–4 by its very terms provides that use of a credit card if fraudulent violates the statute. Ascribing to the word 'use,' its plain and ordinary meaning, it is obvious that the actions of an individual in presenting a stolen or falsified card with the intent to defraud fall within the prohibition of the statute.

The Illinois Supreme Court, when confronted with a similar statute, noted the absurdity of applying the statute only to those who actually succeed in obtaining goods. That court, in disposing of the issue stated:

> "To accept the argument that the legislature intended to punish only those who actually obtain goods while not penalizing those who unlawfully use a credit card without actually obtaining the property would lead to an illogical and virtually incredible result. It would be absurd and incongruous to conclude that the legislature sought only to punish one class of offender. To construe the penalty provision of the statute in this manner would be to disrupt a major purpose of the Act, and to ignore the intent of the legislature in enacting the statute."

*People v. Gibson*, 99 Ill.App.3d at 621, 55 Ill.Dec. at 27, 425 N.E.2d at 1200.

■ We further recognize the principle that when necessary, in order to achieve the purpose of a statute, this court may supply, modify, or delete those words necessary to effectuate the intended meaning of the Legislature. *Mason v. Bowerman Bros., Inc.*, 95 R.I. 425, 433, 187 A.2d 772, 777 (1963). Therefore, in order to carry out the intent of the Legislature that individuals whose unlawful use of a credit card is unsuccessful fall within the provisions of § 11–49–4, we conclude that the statutory language should be expanded to include goods obtained or *sought to be obtained*. Thus, the transgressor would be subject to penalties dependent upon

whether the value of the goods obtained or "sought to be obtained" exceeds the amount of $100 over a six-month period.

## II

The defendant next argues that his Sixth Amendment right to the effective assistance of counsel was violated by the trial justice's denial of defense counsel's motion to withdraw because of a conflict of interest.

■■■ The state initially contends that defendant's claim of ineffective assistance of counsel may be raised only as a matter of postconviction relief and not on direct appeal. This court has held, however, that "[a]lthough we consider this claim to be more properly cognizable in post-conviction proceedings * * * in the past we have occasionally entertained a claim of lack of effective counsel on direct review." *State v. Levitt*, 118 R.I. 32, 39, 371 A.2d 596, 600 (1977); *see State v. Roderick*, 121 R.I. 896, 899, 403 A.2d 1090, 1092 (1979); *State v. Freitas*, 121 R.I. 412, 416–17, 399 A.2d 1217, 1219 (1979). Claims of ineffective assistance of counsel which are based on specific rulings by the trial justice may be considered on direct appeal because such action is "consistent with the fundamental principle that only specific rulings of a trial justice are reviewable on direct appeal." *State v. Levitt*, 118 R.I. at 40, 371 A.2d at 600. In the instant case, defense counsel filed a pretrial motion to withdraw from the case. The trial justice made a specific ruling on his motion, from which defendant now appeals. This court is therefore not without jurisdiction to consider defendant's claim of ineffective assistance of counsel on direct review.

■■■ The Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment guarantees to a criminal defendant the right to the effective assistance of counsel, which includes time to advise with counsel and prepare a defense. *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932). This right imposes

upon the trial court a "duty to refrain from embarrassing counsel in the defense of an accused by insisting * * * that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court." *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, 702 (1942). Moreover, the Sixth Amendment requires that the assistance of counsel be "untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." *Id.* at 70, 62 S.Ct. at 465, 86 L.Ed. at 699.

In *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426, 434 (1978), the Court held that a trial court's failure to investigate defense counsel's timely assertion of a conflict of interest violates an accused's Sixth Amendment right to the effective assistance of counsel. In *Holloway*, three men were on trial for rape. The trial court appointed one attorney to represent all three defendants. A month before trial and again before the jury was impaneled, the defendants filed a motion for the appointment of separate counsel. The defendants alleged the existence of a conflict of interest due to the fact that each defendant intended to testify and possibly implicate the others. The trial justice summarily denied the motion, and the Arkansas Supreme Court affirmed on the ground that no actual conflict arose because none of the defendants had incriminated their codefendants by their testimony. The United States Supreme Court reversed. The Court initially noted that the multiple representation of codefendants by one attorney does not in and of itself violate an accused's right to the effective assistance of counsel. However, a constitutional violation occurs if the trial court fails to either grant the defendant's request for separate counsel or in the alternative "take adequate steps to ascertain whether the risk [is] too remote to warrant separate counsel." *Id.* at 484, 98 S.Ct. at 1178, 55 L.Ed.2d at 434. Thus the trial court's fail-

ure to investigate defense counsel's timely allegation of a conflict of interest constituted a violation of the defendants' Sixth Amendment rights. *Id.*

More recently, the Supreme Court held that a trial court is under no obligation to initiate inquiry into a possible conflict of interest. *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, 346 (1980). However, the Court reaffirmed that "a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." *Id.* at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346. Additionally, the *Cuyler* Court emphasized that for constitutional purposes, no distinction may be drawn between defendants represented by private counsel and those with court-appointed counsel. *Id.* at 344, 100 S.Ct. at 1716, 64 L.Ed.2d at 344.[1]

■■■ In the instant case, counsel apprised the trial justice of the potential conflict of interest by filing a motion to withdraw prior to the impaneling of the jury.[2] Accordingly, the trial court was under a duty to properly investigate defense counsel's assertion of a conflict of interest. The failure to so investigate violated the defendant's right to effective assistance of counsel. Although the United States Supreme Court has only addressed this issue in cases involving the multiple representation of codefendants, the defendant in the instant case is entitled to no less constitutional protection. We hold that the duty of the trial court to make inquiry into the potentiality of a conflict of interest exists whenever timely assertion of a conflict is made. The trial justice's assertion of untimeliness in the instant case was error. We therefore hold that the summary denial of defense counsel's motion to withdraw

violated the defendant's Sixth Amendment right to the effective assistance of counsel.

The defendant's appeal is denied in part and sustained in part, the judgment of conviction is reversed, and the case is remanded to the Superior Court for a new trial.

---

1. The *Cuyler* Court additionally held that defense counsel has "an ethical obligation to avoid conflicting representations" and must immediately advise the court when a conflict of interest arises during the course of, as well as prior to, trial. *Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, 345 (1980).

2. *Holloway* held that when defense counsel moves to withdraw before the jury is impaneled, the motion is timely. *Holloway v. Arkansas,* 435 U.S. 475, 484, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426, 434 (1978).