STATE

v.

**Richard B. TOOHER and Bruce N. Binns.**

**No. 87–111–C.A.**

Supreme Court of Rhode Island.

June 7, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for plaintiff.

Ina P. Schiff, Providence, for defendants.

## OPINION

KELLEHER, Justice.

The defendants, Richard B. Tooher (Tooher) and Bruce N. Binns (Binns), are appealing from their convictions by a Superior Court jury. Tooher was convicted of obstructing justice and conspiring to obstruct justice. *See* G.L. 1956 (1981 Reenactment) §§ 11-1-6 and 11-32-3. Binns was convicted of the same charges as well as assault and battery. The charges arose out of incidents that occurred while Tooher was the police chief in the town of Glocester and Binns was a police lieutenant in the same town.

The testimony of two former Glocester police officers, James N. Williams (Williams) and Sergeant Robert W. Knight (Knight), played an important part in the Superior Court trial. Not surprisingly then, their testimony is also the basis for two out of the three issues that defendants raise on appeal.

At trial Williams testified that on June 30, 1984, at approximately 10 p.m., he responded to the report of a housebreak on Snake Hill Road in Glocester. Upon arrival Williams called Binns, who was off duty at that time, to assist him in the "processing" of the crime scene. Knight also responded to the housebreak complaint but left the scene to track down information about a car that had been seen leaving the vicinity. At approximately 11:30 p.m., while still at the Snake Hill address, Williams and Binns received a call from Knight that he had found the car. It was registered to Richard Raymond (Raymond) and was found in front of his mobile home in a nearby trailer park.

Binns and Williams then traveled in separate vehicles to the trailer park where they were joined by two State Police officers, whose assistance they had requested. Upon his arrival, Williams looked into the car, which he said was "very clean." He did not see any packages or items on the seats or the floor. We would emphasize that at this point none of the officers had obtained either an arrest warrant or a search warrant. Binns had told Williams when they were leaving the Snake Hill property that they did not need a warrant.

The five officers approached the Raymonds' trailer. After first attempting to gain entrance through one of the trailer's doors, Williams and the other officers heard a woman yell from inside that she would open the front door. All of the officers then entered the trailer through the front door.

They found Raymond in the bedroom of the trailer. Williams later explained that because Raymond was not cooperating, he was handcuffed and put into Williams's police cruiser. Raymond, who is five foot two inches tall, later testified that he had been sleeping before the police arrived. He said he was thrown on the floor, handcuffed, threatened, and then picked up and hustled out of the trailer.

Williams also testified that later as they were about to enter the Glocester police station, Binns struck Raymond in the lower back with his police baton. He hit him again in the right calf, Williams said.

Williams also admitted that he himself slapped Raymond in the back of the head a few times. He emphasized, however, that Raymond did not fall down the stairs as Binns and Tooher later contended.

Raymond also testified that he had been struck in the back and the right leg by Binns wielding a baton. He added that Williams had hit him in the chest, stomach, and shoulders. After having been finger-printed and photographed, Raymond began complaining of numbness and loss of feeling in his legs. Williams said that Raymond looked "limp" and "his eyes were very glossy." Raymond was transported by rescue squad first to Fogarty Hospital and then to Rhode Island Hospital. He was initially diagnosed as having a broken back, a diagnosis that Raymond contends Binns overheard.

According to Williams, Tooher arrived at the police station after the rescue squad had left with Raymond. Tooher was in contact with Binns, who was with Raymond at the hospital. Williams said that Tooher or Binns asked him and the department's dispatcher to execute a false report indicating that Raymond had fallen down the stairs.

Knight, who also testified for the state, corroborated much of Williams's testimony. He testified that after discovering that the car was registered to Raymond, he drove to the trailer park where he observed the vehicle. He then called Binns and Williams. They appeared at the trailer park followed by two state troopers. Knight looked into the Raymond car and saw nothing. After Raymond's arrest, his car was towed to the State Police barracks in Chepachet. Knight went with the truck, and he asserted again that there were no objects in the car at that time.

Later, sometime just before sunrise, Knight, Tooher, and Binns returned to the site of the housebreak. Knight testified that as the trio walked into the house, "the Lieutenant was saying to the Chief that he didn't think this case was going to fly * * * [a]nd he stated that he didn't need another lawsuit against him at that time."

Tooher responded that "[m]aybe we'll help it along a little bit." He and Binns then "went around the house and gathered up several articles from the house." Those items—a blanket, a statue, and an eyeglass case—were later "found" in Raymond's car.

In their first issue on appeal, defendants contend that the trial justice erred in not permitting them to explore alleged incon-sistencies in Knight's trial testimony and prior statements that he made to a grand jury and to an investigator for the attorney general's office.

This court has said repeatedly that "once sufficient cross-examination has been given in order to satisfy the right to confronta-tion, further cross-examination is within the sound discretion of the trial justice." *State v. Vento,* 533 A.2d 1161, 1164 (R.I. 1987); *see also State v. Payano,* 528 A.2d 721, 729 (R.I. 1987); *State v. Waite,* 484 A.2d 887, 892 (R.I. 1984).

The defendants attempted at trial to show that Knight had not previously told the grand jury some of the information he offered at trial. The trial justice sustained an objection on the ground that it was not "probative [of] anything, that the man hasn't said something to somebody else about this matter before." According to defendants, the limits placed on cross-ex-amination were "complicated" by the trial justice's unawareness of the immunity agreement between the state and Knight.

It is hard to understand what the complication was. In the first place, on June 19, 1986, the state filed supplemental responses to discovery requests and listed both the Williams and the Knight agree-ments. The court may well have been aware of the agreement. In any event, defense counsel knew about the agree-ment[1] and could have offered it to prove motivation or bias. Also, it does not seem that the trial justice erred in denying de-fendants a chance to impeach Knight be-cause he had not previously mentioned the "planting" of evidence in Raymond's car.

1. Appellate counsel was not trial counsel.

In *Vento* this court sustained the trial court's ruling that there was no material inconsistency between a witness's earlier statement that she had consumed about nine bottles of beer and her trial testimony that she could not remember how much she had drunk. 533 A.2d at 1164. Similarly, it appears that there is no impeachable inconsistency in Knight's omission of certain facts before the grand jury—about which he was not asked directly—and his trial testimony.

The state filed several motions in limine. In regard to Williams, both defendants argue that the trial justice improperly limited cross-examination of Williams "by granting the [s]tate's motion in limine precluding defense counsel from inquiring about Mr. William'[s] prior inconsistent conduct, refusal to cooperate with a previous State Police investigation as well as two grand juries, and related factors relevant to his credibility and bias." We would note, however, that the trial justice did *not* grant a number of the state's motions that asked that any reference to a pending indictment against Williams for his part in assaulting Raymond be precluded, nor did the trial justice grant a third motion that was aimed at eliminating all reference to the fact that a previous grand jury had not indicted defendants on these charges. He specifically held that if the state introduced evidence of the prior grand jury investigation, defendants would be permitted to cross-examine it. Nor, finally, did the trial justice grant another motion that sought to bar any evidence of a tape-recorded telephone conversation between Raymond and Binns. He said he would rule at the appropriate time, in cross-examination, whether it would be permissible. The defendants admit that the trial justice allowed cross-examination

of Williams "concerning his prior silence, his motives for seeking immunity, and the circumstances surrounding the grant of immunity." And, as the state points out, the cross-examination of Williams consumed over eighty pages of transcript and covered a wide range of topics. We cannot fault the trial justice's actions.

On appeal defendants contend that some "newly discovered evidence," when contrasted with the evidence presented at trial, clearly establishes that the testimony of Knight and Williams was not credible and that therefore the verdict could not stand. They refer to affidavits of two state troopers suggesting that Knight was not at their Chepachet barracks at the time that he said he was on July 1, 1984. The defendants also point to certain records and logs of the State Police that do *not* affirmatively show that Knight was there when he said he was.

We agree with the state's contentions that this issue is not properly before us. A newly-discovered-evidence claim must be presented to the trial justice in accordance with Rule 33 of the Superior Court Rules of Criminal Procedure.[2] Rule 33 clearly states that a new-trial motion must be considered first in the trial court before this court can hear it on appeal. Recently, in *State v. Estrada*, 537 A.2d 983, 986 (R.I. 1988), we reiterated the principle that this court will not change the decision of a trial justice on a motion for new trial unless the decision is clearly wrong or unless the trial justice, in reviewing the evidence, overlooked or misconceived relevant and material evidence. *State v. Brown*, 528 A.2d 1098, 1104 (R.I. 1987); *State v. Collazo*, 446 A.2d 1006,

2. Rule 33 of the Superior Court Rules of Criminal Procedure provides:

"New trial.—The court on motion of a defendant may grant a new trial to him if required in the interest of justice, except that a new trial may not be granted for error of law occurring at the trial. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two (2) years after entry of judgment by the court, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within ten (10) days after verdict or finding of guilty or within such further time as the court may fix during the ten-day period. A copy of the motion for a new trial shall be filed with the trial justice contemporaneously with its filing with the clerk of the court."

1012 (R.I. 1982). Such a standard of review can only apply to situations wherein the trial justice has had an initial opportunity to consider the motion at the trial-court level. Since defendants did not raise the issue before the trial justice, it cannot be raised in this court now.

The defendants also claim that they were prejudiced by prosecutorial misconduct, ineffective assistance of counsel, and the trial justice's jury instructions. We shall address these issues briefly.

As far as the claims of prosecutorial misconduct are concerned, we find none particularly meritorious. For instance, there is no contention that the state failed to disclose the immunity agreements of Knight and Williams altogether. Although the state did not immediately disclose them, defendants knew about them and had copies of the agreements several weeks before trial.

■ More importantly, defendants did not file objections on the record to any of these actions by the prosecutor, or in any other way raise these issues below. It is well settled that claims of error are deemed to have been waived if not effectively raised at trial. *State v. Burke*, 529 A.2d 621, 627 (R.I. 1987); *see also State v. Oliviera*, 534 A.2d 867, 868 (R.I. 1987); *State v. Brown*, 533 A.2d 1159, 1161 (R.I. 1987). Although in certain narrowly-defined circumstances, the court will address constitutional claims raised for the first time on appeal, *State v. Burke*, 522 A.2d 725, 731 (R.I. 1987), this exception is not applicable to defendants' claims.

The defendants also argue that their trial counsel provided ineffective assistance of counsel by failing to introduce the immunity agreement between the state and Knight, to cross-examine Knight effectively, to move for admission of the State Police day sheet, to investigate fully before trial, and to request specific jury instructions concerning the immunity agreements of Knight and Williams.

■ This court has stated that postconviction relief is the more appropriate avenue to take to raise a claim of ineffective assistance of counsel. *State v. Farlett*, 490 A.2d 52, 54–55 (R.I. 1985); *State v. Gonsalves*, 476 A.2d 108, 112 (R.I. 1984). It is possible that claims "based on specific rulings by the trial justice may be considered on direct appeal because such action is 'consistent with the fundamental principle that only specific rulings of a trial justice are reviewable on direct appeal.'" *Gonsalves*, 476 A.2d at 112 (quoting *State v. Levitt*, 118 R.I. 32, 40, 371 A.2d 596, 600 (1977)). The errors claimed by defendants, however, do not fit this exception. There is not a fully developed record and a decision of the Superior Court regarding whether defense counsel's alleged failings were a "genuine manifestation of ineffective assistance." *Farlett*, 490 A.2d at 54. Therefore, this court will not entertain defendants' claim about incompetency of counsel at this point.

Last, defendants contend that the trial justice failed to instruct the jury in regard to the fact that Binns had the privilege of using reasonably necessary force in arresting Raymond, in regard to the appropriate standard to use in assessing credibility of witnesses testifying under an immunity agreement, in regard to bias, and in regard to the fact that the offering of a release to Raymond by Tooher was not per se an obstruction of justice.

■ A trial justice's obligation when charging a jury is to give correct instructions only in regard to those rules of law that of necessity must be applied to the issues at trial. *State v. Medeiros*, 535 A.2d 766, 772 (R.I. 1987); *State v. Arpin*, 122 R.I. 643, 666, 410 A.2d 1340, 1352 (1980). "A trial justice need not instruct the jury in the specific language requested by a party if his [or her] charge adequately covers the requested instructions." *State v. Burke*, 522 A.2d at 736. "As long as he [or she] states the applicable law, a trial justice may charge the jury in his [or her] own words." *Id.* This court will examine challenged portions of the instructions in light of the entire charge and will view it as would a reasonable juror. *State v. Caruolo*, 524 A.2d 575, 582 (R.I. 1987). Viewing them as a whole, we find that the trial

justice's instructions in this case adequately covered the applicable law.

For the reasons set out above, we find that there was no error in the entry of judgment on the verdicts and in the denial of the motion for a new trial. The defendants' appeals are denied and dismissed, and the convictions appealed from are affirmed.