**STATE**

v.

**Bruce N. BINNS.**

**No. 95–436–CA.**

Supreme Court of Rhode Island.

July 8, 1999.

Lauren Sandler Zurier, Aaron L. Weisman, Providence, for Plaintiff.

Robert B. Mann, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on the defendant's appeal from an order entered by a justice of the Superior Court on March 14, 1991, denying a motion for a new trial on the grounds of newly discovered evidence. The defendant also

appeals an order entered on July 26, 1995, denying his motion for a new trial on the grounds of prosecutorial misconduct. For the reasons set forth below, we affirm the findings of the trial justice and deny the defendant's appeal.

## Facts and Travel

The defendant, Bruce N. Binns (Binns), a former police lieutenant for the town of Glocester, was tried and convicted by a jury in the Superior Court of obstructing justice, conspiring to obstruct justice, and assault and battery. During trial, two former Glocester police officers, James N. Williams (Williams) and Sergeant Robert W. Knight (Knight), offered testimony that implicated Binns and the then chief of police, Richard Tooher (Tooher) in the aforementioned offenses.[1] Williams, a "rookie cop" at the time of the incident, testified that on June 30, 1984 at approximately 10 p.m., he responded to a housebreak at the Ronci home located on Snake Hill Road in Glocester and summoned Binns, who was not on duty at that time, to assist him in "processing" the scene of the crime. After receiving information relating to the suspect's vehicle, Knight found the vehicle at the registered owner's mobile home in a nearby trailer park. Thereafter, Knight summoned Williams and Binns to the trailer park, where they apprehended Richard Raymond (Raymond, or the suspect). Williams testified that he observed Binns striking Raymond in the back and legs with his police baton, and Raymond indicated that he was thrown to the floor, handcuffed, and hustled out of the trailer. After Raymond was fingerprinted and photographed at the Glocester police station, he was transported to Fogarty Hospital and eventually to Rhode Island Hospital where he was diagnosed as having a broken back.

Much of this testimony was corroborated by Knight, who also testified that the suspect's car did not contain any stolen merchandise from the housebreak when he first observed it at the trailer park, or later when he accompanied the vehicle to the State Police barracks in Chepachet. After transporting the car to the police barracks, Knight accompanied Tooher and Binns to the scene of the housebreak, purportedly "just before sunrise."

The inconsistencies regarding the time frame in which Knight arrived at the Ronci house has been problematic throughout this litigation. During the trial, Knight testified to the jury that he remained at the Chepachet State Police barracks for "a while" after Raymond's car was delivered, and spoke with some of the officers there before leaving for the Glocester Police Station and then, for the Ronci house. Although Binns contends that they were not informed of this evidence prior to trial, the police day sheets that recorded every entry to the police barracks were available for examination. When questioned at trial as to his arrival time at the Ronci home, Knight could not "recall the exact time" but did indicate that it was around sunrise. He also admitted at trial that he had told the grand jury that after his shift ended, he went directly home, which was exploited by the defense primarily for impeachment purposes. He had also made a statement on May 6, 1986, to an investigator from the Attorney General's office that he went to the Ronci housebreak at approximately two o'clock in the morning, when his shift ended, rather than "just before sunrise."

While inside the Ronci house, Knight testified that he overheard a conversation between Binns and Tooher in which they discussed "help[ing] * * * [this case] along a little bit" and observed them going "around the house and gather[ing] up several articles from the house" which "were later 'found' in Raymond's car." *State v. Tooher*, 542 A.2d 1084, 1086 (R.I.1988).

---

1. This Court granted Tooher's motion to withdraw his appeal on October 30, 1996. Thereafter, Tooher later moved to vacate this Court's order to reinstate his appeal, but this motion was denied on May 1, 1997. The instant appeal is pursued solely by Binns.

Based on the evidence presented at trial, both Binns and Tooher were convicted.

Binns appealed the judgment of conviction entered against him. After arguments were heard but while this Court's decision was pending, Binns filed a motion with this Court requesting a stay of appellate proceedings and a remand to the Superior Court for an evidentiary hearing on the basis of newly discovered evidence. We denied the motion to remand.

The convictions of Binns and Tooher were affirmed on appeal to this Court in 1988, and we concluded that defendants' claim of prosecutorial misconduct was waived since timely objections were not raised at trial, and further that the trial justice's instructions to the jury were proper. *Tooher*, 542 A.2d at 1088–89. Thereafter, Binns filed a motion for a new trial on the grounds of newly discovered evidence pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. The trial justice denied this motion on March 14, 1991, and Binns subsequently appealed to this Court on March 15, 1991.

Following the issuance of the March 14, 1991 decision denying Binns' motion for a new trial, a flurry of activity occurred, including additional allegations of misconduct and subsequent motions in both this Court and in the Superior Court. While the appeal was pending, Binns sought this Court's permission to conduct additional discovery. This Court denied Binns' motion for additional discovery based upon procedural error, remanded the papers to the Superior Court, and stayed appellate proceedings pending completion of further discovery efforts in Superior Court.[2] In seeking to persuade the Court to grant the motion to remand for additional discovery, Binns relied upon the contention by a wit-

ness for the state, Molly Raymond, that key elements of Raymond's trial testimony leading to the conviction of Binns were false, and the contention that Knight allegedly lied at trial.

Thus, appellate proceedings in this matter were stayed pending the conclusion of further activities in the Superior Court, in accordance with our limited remand. Following the resolution of these matters, the trial justice ultimately rendered a second decision on July 26, 1995, in which he denied and dismissed Binns' motions for a new trial. Binns now appeals and challenges both decisions denying his motions for a new trial.

## Analysis

### I

### Newly Discovered Evidence

■ This Court employs a deferential standard when reviewing a motion for a new trial and will not disturb a trial justice's decision unless he or she has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong. *See State v. Firth*, 708 A.2d 526, 532 (R.I.1998); *see also State v. Gomes*, 690 A.2d 310, 321 (R.I.1997). We have previously determined that a trial justice's ruling on a motion for a new trial will be afforded great weight. *See State v. Dame*, 560 A.2d 330, 332 (R.I.1989). We note at the outset that the trial justice in the case at bar has performed heroically and has written a combined total of over three hundred pages in his 1991 and 1995 decisions. He has considered an immense amount of material and exhaustively examined each issue raised by the litigants. We are satisfied that he articulated sound rationales for his decisions denying the

---

**2.** The allegations contained in the motion did require consideration, however, and the Court conducted a hearing on April 1, 1991, which authorized Binns to depose J. Joseph Nugent, Dennis Drake, Bryan Merchant, Molly Raymond, Jaime Hainsworth, Kyle Glasko, and Gerald Prendergast. Binns and Tooher did not comply with the terms of the Court's

order and did not depose Merchant, Hainsworth, or Glasko but did depose Deborah Lister and Wayne M. Sacco without authorization. In response to this activity, on May 2, 1991, we ordered that no depositions be taken by the prosecution or the defense without the permission of this Court.

new trial motions and adequately exercised his independent judgment in ascertaining the weight of the evidence and the credibility of the witnesses. *See State v. Bleau,* 668 A.2d 642, 646 (R.I.1995).

In order to succeed on a motion for a new trial based on newly discovered evidence under Rule 33, a defendant must satisfy a two-pronged test. *See Firth,* 708 A.2d at 532. If the defendant fails to satisfy the first component of this two-pronged test, then the court is not required to consider the remaining criteria. *See e. g., State v. Hernandez,* 641 A.2d 62, 72–73 (R.I.1994); *State v. Estrada,* 537 A.2d 983, 986 (R.I.1988).

The first prong of the test for newly discovered evidence consists of several components, including the requirement that newly discovered evidence is discovered post-trial and was not discoverable prior to trial through the exercise of due diligence. *See Firth,* 708 A.2d at 532. The supposed newly discovered evidence proffered by Binns, although not developed until after trial, was available for use in his defense and could have been discovered during trial with a reasonable amount of diligence. We agree with the 1991 determination of the trial justice that Knight's sunrise testimony and its ramifications therewith, was not newly discovered or newly available evidence and that "if the defendants felt it beneficial to their cause, they had it within their power to marshal all the evidence for presentation at the trial."

The final components necessary to satisfy the first prong of the Rule 33 test requires that the newly discovered evidence not be merely cumulative or impeaching, but material to the issue upon which it was admissible and of the type that would likely change the verdict at trial. *See Firth,* 708 A.2d at 532. We again defer to the Superior Court justice's findings in his 1991 decision that this newly discovered evidence functioned only "to

impeach a witness who was substantially impeached at trial [and][e]ven worse, this evidence * * * [was] designed to impeach on a collateral matter." We are satisfied that the trial justice was correct in finding that the proffered evidence would fail to change the verdict at trial and that it "adds nothing new to the case."

The trial justice determined that "[t]he critical question at trial was whether [Knight] was at the Ronci house * * * where the defendants concocted and carried out an obstruction of justice." Based upon Knight's testimony, the recalcitrance of this witness was clearly apparent both to the defense counsel and to the trial justice. In accordance with the trial justice's finding, we conclude that Binns' choice not to use this evidence at trial amounted to a failed trial strategy and he will not be granted a new trial merely by showing that this witness can be contradicted.

Although not required to do so, we shall continue our analysis as if this first prong of Rule 33 were satisfied and address the second prong of the test which requires the hearing justice to determine if any of the proffered evidence was sufficiently credible to warrant a new trial. *See Firth,* 708 A.2d at 532; *see also Hernandez,* 641 A.2d at 72. We conclude that Binns' efforts are sorely lacking. We need only observe that the trial justice has been prolific in his opinion that the allegedly newly discovered evidence "succeeds only in laying bare the infirmity of their [Binns' and Tooher's] position and the loose manner with which they deal with the facts" which "border[s] on the reckless."

In addition to attacking Knight's so-called "sunrise testimony," Binns also presented testimony by a colorful cast of characters to demonstrate in one way or another that the victim had been involved in several fraudulent schemes throughout his life.[3] The trial justice generally dis-

3. Some of these witnesses included Sheila Haworth, Gina Raymond, Richard Bressan,

counted much of this testimony because he found the witnesses simply not credible. Additionally, the trial justice characterized much of this testimony as "preponderantly hearsay," "infinitesimal" and "not critical to the indictment." We find it unnecessary to expound upon these findings, save to concur therewith.

## II

### Prosecutorial Misconduct Allegation

 Amid the particular imperatives of a prosecutor enumerated in Article V, Rule 3.8(d) of the Supreme Court Rules of Professional Conduct, is that "[t]he prosecutor in a criminal case shall * * * make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused * * *." Binns advances various arguments alleging misconduct by Prosecutor Nugent at several phases of the litigation, including Nugent's purported personal knowledge of Knight's conflicting "sunrise testimony" and the subsequent dismissal of the arson count against Tooher immediately before the trial. We find these allegations to be devoid of merit for the following reasons.

In Binns' 1995 motion for a new trial, he contends that the prosecution denied him information to which he was entitled, thereby violating Rule 16 of the Superior Court Rules of Criminal Procedure. We concur with the Superior Court justice's findings that Nugent had no pretrial knowledge of Knight's "sunrise testimony" nor was his opening statement at trial and his dismissal of Tooher's arson count a precursor to this "wholly unanticipated" testimony offered by Knight. We further

defer to the findings of the trial justice that: "[T]he defendants have failed to make the least minimal showing that any evidence favorable to them for their defense was suppressed or withheld by the state" and that the "defendant's proposition that exculpatory evidence in the nature of a purported conflict in Knight's 'around sunrise' testimony and Williams' car fire testimony should have been disclosed is without foundation."

We agree with the trial justice's determination that "[w]hat ever reason prompted Nugent to dismiss the arson charges, it was not bottomed on any knowledge or concern that there was an exculpatory conflict in the testimony of Knight and Williams." Moreover, Binns had the "opportunity to inquire into the elements which comprised [Nugent's] judgment call [in dismissing the charge], and they exercised a judgment call of their own in declining to do so." We comport with the trial justice's conclusions that the defendant's "unsupported and unjustified accusations exceed the bounds of proper advocacy" and that the defendant's failed trial strategies "may not be metamorphosed into a basis for a new trial."

For the aforementioned reasons, we deny and dismiss the defendant's appeals. The orders of the Superior Court are affirmed, and the papers of the case are remanded to the Superior Court.

Justice FLANDERS did not participate.

---

and James Lancia all of whom testified to the effect that the Raymonds were "cheats and liars." The trial justice determined that "the Haworth evidence, * * * was available to the defendants for their 1988 motion for a new trial, [and] parrots the evidence which the defendants presented in their 1988 motion through Gina Raymond, Richard Bressan and James Lancia." He also concluded that "Haworth was careless, if not cavalier, in assert-

ing facts with a propensity to inflate them as well," and further that her "statements to Prendergast and to the court are completely untrustworthy."

The trial justice also discounted Molly Raymond's statements as "extraneous to any issue raised" and "entirely collateral material." We are satisfied that this matter warrants no further consideration by this Court.