STATE

v.

**Joseph NARDOLILLO.**

No. 96–4–C.A.

Supreme Court of Rhode Island.

July 17, 1997.

---

Lauren Sandler Zurier, Aaron L. Weisman, Providence, for Plaintiff.

Lauren E. Jones, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

This case comes before us on appeal from judgments of conviction entered in the Superior Court against the defendant, Joseph Nardolillo, following a jury trial on six charges of entering a dwelling with intent to commit larceny in violation of G.L.1956 § 11–8–3. We affirm. The facts pertinent to our disposition of this appeal are as follows.

### I

### Facts and Travel

#### A. The Break-ins

Joseph Nardolillo (defendant) was charged by criminal information filed on January 11, 1994, with having entered into nineteen dwelling houses within the city of Providence between September 28 and December 6, 1992. The trial evidence disclosed that during that period of time the defendant was addicted to cocaine and by his own admission consuming $20–bags of cocaine at the rate of ten to fifteen bags per day. In order to support that expensive addiction the defendant took to stealing. The evidence indicates that the defendant, along with his brother, Nicholas Nardolillo (Nick), would have the defendant's girlfriend, Michelle Denommee (Michelle), chauffeur them through the streets of Providence looking for houses from which to steal. She was induced to do so on the pretext that the brothers were merely interested in going for a ride. However, upon observing what they perceived to be a vulnerable house to break into and steal from, the brothers would then order Michelle to turn into the driveway of the particular house, would break into the house, and then would fill the car's trunk with stolen stereo equipment, televisions, video cassette recorders, and other valuable items taken from the house. Once the break-in was complete, the trio would then drive to a nearby drug dealer and exchange the stolen goods for cocaine and various other narcotics. The stolen goods were purportedly never exchanged for money. Following the iniquitous exchange, the defendant would then spend the rest of the afternoon smoking cocaine. Often he would perform another break-in during the evening in order to obtain more cocaine or Valium to help him sleep.

#### B. The Arrests

During the defendant's crime spree, the Providence police had been investigating a series of breaks occurring in the Providence area. In the course of that investigation they questioned the defendant's brother, Nick, and their investigation ultimately began to focus on the defendant as well as Nick. Coincidentally, the defendant at or about that same time was arrested on two occasions, the first, stemming from an unrelated matter. Both arrests, however, led to the defendant making inculpatory statements related to the break-ins, which statements were later introduced as evidence at his trial.

The first arrest took place on Saturday, November 21, 1992, at approximately 4 p.m. The defendant had been stopped by the Warwick police while driving his car in that city and it was then learned that there was an outstanding Sixth Division District Court warrant for his arrest. He was arrested on that warrant which concerned a charge unrelated to the break-ins and was transported to

the Providence police station to be held for presentment on the warrant. He was not advised of his *Miranda* rights because he was not then interrogated by the police and was placed in a holding cell to await his being presented on the outstanding warrant in the District Court. He was held until Monday, November 23, 1992. On that Monday morning at around 8 a.m., the defendant was awakened, advised of his constitutional rights, which he waived, and was then taken to an interrogation room for questioning. There he admitted his involvement in a house break-in. He further agreed to cooperate with the ongoing police house-break investigation. He was then taken by the police and driven to a location on Manton Avenue in Providence where he said he had exchanged the stolen property for cocaine. He was then taken back to the police station and was again placed in a holding cell, where he spent the night. The next morning, Tuesday, November 24, the defendant was given a written waiver of rights form that he agreed to sign and once again waived his *Miranda* rights. The defendant then shortly thereafter signed a written statement that connected him to a dwelling house break-in. Later that day he was presented on the outstanding District Court warrant and was also arraigned in the District Court on the new dwelling-house break-in charge. He was then released on bail.

The defendant's second arrest occurred on Thursday, December 10, 1992, around noon. The defendant at the time of his arrest was advised of his *Miranda* rights and was later additionally advised of those rights upon his arrival at the police station. The police informed him that they had his brother, Nick, in police custody and that his brother was cooperating with the police in their house-break investigation. The defendant, under the belief that his brother was cooperating, then waived his *Miranda* rights and within thirty minutes after his arrival at the police station proceeded to implicate himself in a number of dwelling house break-ins. He was then placed in a holding cell and held overnight. The next morning, December 11, 1992, the defendant was reminded that he had been previously given his *Miranda* warnings. He was then taken and driven by

the police through various Providence areas so that he could point out the dwelling houses that he had admitted breaking into. Following that tour of Providence the defendant was once again taken to the police station, placed in a holding cell and held overnight. On Saturday morning, December 12, the defendant was again given a written *Miranda* rights form which he readily signed, acknowledging the waiver of his *Miranda* rights. He then agreed to cooperate further with the investigating officers concerning the various house-breaks in which he was involved. The defendant thereafter gave and signed a written statement implicating himself in nineteen house-breaks. He was arraigned the next day, Sunday, December 13, 1992.

Later, on January 11, 1994, a criminal information charging the defendant with nineteen counts of entering a dwelling with intent to commit larceny therein, in violation of § 11-8-3 was filed in the Superior Court. He was tried on those charges before a jury, and at the close of the state's case the trial justice granted motions for judgment of acquittal on thirteen of the criminal information counts because of the failure or refusal of the victims to testify. The jury later convicted the defendant of the remaining six counts. The defendant's motion for a new trial was later denied, and he was then sentenced. His appeal is now before us. In it he alleges error on the part of the trial justice in denying his motion to suppress the incriminating statements he had made and given to the Providence police and to certain evidentiary rulings made by the trial justice during the trial.

## II

### The Motion to Suppress

Prior to trial, the defendant had moved to suppress all inculpatory statements given by him to the Providence police following his two arrests. A hearing on his motion was held before a trial justice in the Superior Court after which the trial justice denied defendant's motion. The defendant now challenges the trial justice's ruling and the admission of those statements. He contends that the police unnecessarily delayed his

presentment to a judge following his arrests and thereby violated the command of Rule 5(a) of the Superior Court Rules of Criminal Procedure.[1] In addition, he contends that he did not validly waive his *Miranda* rights prior to giving his statements and that his confessions were involuntarily obtained.

## A. The Rule 5(a) Objection

■ Pursuant to Rule 5(a) police are required to promptly present an arrested individual before a judge for arraignment. The language of the rule states:

"Unless otherwise provided by statute, an officer making an arrest under a warrant issued upon a complaint shall take the arrested person without unnecessary delay before a judge of the District Court as commanded in the warrant * * *."

The rule itself is not a constitutional command to be found within the text of our Federal or State Constitutions, and its breach does not necessarily create any constitutional violation. Rather, we view the rule as a prophylactic measure designed to prevent other constitutional infirmities. As the reporter's notes to Rule 5(a) explain,

"The purpose of this requirement is to assure that the arrestee is provided with an adequate statement of his constitutional and statutory rights as soon after arrest as possible, thereby minimizing the possibility of an unwitting waiver of important rights—particularly the protection against self-incrimination." *See also State v. Robinson*, 658 A.2d 518, 521 n. 1 (R.I.1995).

The defendant here points out that with respect to his November 21 arrest, the delay between his arrest and presentment was approximately seventy-two hours (Saturday afternoon until Tuesday afternoon), and similarly that the delay between his December 10, 1992 arrest and his presentment was also a matter of approximately seventy-two hours (Thursday until Sunday). The defendant contends that the police had numerous opportunities during those three day periods to present him before a District Court judge.

He maintains that the delay in either case was unnecessarily long under the rule and requires suppression of the inculpatory statements made during the period of those delays.

■ We agree that the delays here between defendant's arrest and his presentment were undue. However, we do not conclude that either of the delays requires suppression. We have previously explained that "delay, if it is to render a confession inadmissible, must have been operative in inducing the confession. * * * The trial justice must consider whether the time preceding the suspect's statement had any 'causative effect upon his * * * decision to confess.'" *State v. Lionberg*, 533 A.2d 1172, 1178 (R.I.1987). Thus, the elapsed time between the defendant's arrest and his confession is the critical period we must examine and scrutinize in order to determine if it had been operative in inducing the defendant's admissions.

In neither arrest and holding period instance can we conclude that the period between the defendant's arrest and his admissions had any likely causative effect upon the defendant's decision to incriminate himself. With respect to the December 10, 1992 arrest, the trial justice specifically noted that the defendant gave an oral confession within approximately thirty minutes of his arrest. This extremely brief period of detention convinces us that the later delay in presentment did not have any causative effect on the defendant's earlier decision to make his inculpatory statements. We think the same is true of the November 21, 1992 arrest. In that instance, even though the period between the arrest and his oral confession was between thirty-six and forty-eight hours, there is no evidence to suggest that the defendant made any of his inculpatory statements because of or as a result of the delay in his being presented before a judge of the District Court. Nor does the evidence reasonably suggest that the defendant's later decisions to memorialize his confessions in

---

1. It appears that both arrest warrants were issued from the District Court, but since the Dist. R.Crim. P. 5(a) and Super.R.Crim. P. 5(a) both required the defendant to be taken without un-

necessary delay before a judge of the District Court, the parties' reference to and reliance upon the Superior Court Rule 5(a) is of no material consequence.

writing were the result of any delay in his being presented to the District Court. Rather the evidence clearly indicates that the defendant who had a prior record of some thirty to forty arrests was fully aware of what was transpiring and also reveals that the defendant was advised properly of his constitutional rights before he elected to give his incriminating statements. We thus agree with the trial justice that the defendant's decisions to make the incriminating admissions were not based upon some alleged police tactic of delay designed to produce an involuntary or unwitting confession but rather were based upon his own intimate understanding of the criminal justice system and his desire to be cooperative in hopes of gaining prosecutorial leniency.

■ Furthermore, we reject the defendant's contention that his case even vaguely resembles the factual situation presented to this Court in *Robinson.* The numerous clear violations of the defendant's constitutional rights in *Robinson* included an illegal warrantless arrest and the inexcusable refusal by the police to advise the defendant of his constitutional rights until after he had agreed to give an incriminating statement to the police. The tactics used by the police in that case were egregious and constituted more than a mere delay in presentment. Additionally the undeniable fact that the defendant here was arrested on November 21 and December 10 pursuant to arrest warrants, the first being entirely unrelated to the charges that were ultimately brought in this case, does not as the defendant urges, create the status of an illegal arrest. Nothing suggests that the warrants and the arrests made thereon were unlawful. A valid arrest is not transformed into an unconstitutional pretextual arrest merely because in making that arrest the police hoped it might lead to the discovery of other wrongdoing. *See State v. Bjerke,* 697 A.2d 1069 (R.I.1997); *see also Whren v. United States,* — U.S. —, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The trial justice did not err in denying the defendant's motion to suppress.

### B. The *Miranda* Objection

The defendant next contends that his confessions were obtained pursuant to an invalid waiver of his *Miranda* rights and were not given voluntarily. In reviewing the trial justice's decision, we review his findings of fact deferentially under the "clearly erroneous" rule but yet reserve review of his findings to determine whether those findings overlook any constitutional violation under a *de novo* standard. *See State v. Campbell,* 691 A.2d 564 (R.I.1997) (adopting the standard of review announced in *Ornelas v. United States,* — U.S. —, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) for *Miranda* issues).

■ A defendant's confession is only admissible against him if the state can first prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights expressed in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See State v. Leuthavone,* 640 A.2d 515, 518–19 (R.I.1994); *State v. Bello,* 417 A.2d 902, 904 (R.I.1980). Here the trial justice recognized that the defendant had been arrested at least some thirty to forty times prior to the arrests involved in this case and as a result was thus intimately familiar with the criminal justice system. Additionally the trial justice found that the police had in fact advised the defendant of his *Miranda* rights on both occasions prior to obtaining any incriminating statements from him. With those facts and findings in mind we are satisfied that the defendant was fully aware of his *Miranda* rights and that he fully understood them as they were read to him, and that his voluntary waivers thereof were both knowing and intelligent.

■ With respect to the voluntariness of the defendant's waivers and his subsequent confessions, he claims here as he contended below that he had been physically assaulted prior to making his confessions and that at the time he gave them he was suffering from symptoms of cocaine withdrawal. He suggests that the police took advantage of his drug dependency, which when coupled with their physical abuse of him, enabled them to overcome his free will. The trial justice found the defendant's claims to be incredible.

He accepted instead as credible the testimony of the investigating police officers, who in their testimony denied that any physical abuse had taken place and denied the existence of any withdrawal symptoms. We accept the trial justice's findings, and we conclude that the trial justice properly found that the defendant's waivers and his subsequent confessions were freely, intelligently, and voluntarily given.

> "[A] confession made by a person in custody is not always the result of an overborne will. The police may be midwife to a declaration naturally born of remorse, or relief, or desperation, or calculation." *Culombe v. Connecticut,* 367 U.S. 568, 576, 81 S.Ct. 1860, 1864, 6 L.Ed.2d 1037, 1043 (1961).

### III

### Evidentiary Objections

The defendant also raises three evidentiary issues for our review. He suggests first that pursuant to Rule 404(b) of the Rhode Island Rules of Evidence that the trial justice improperly admitted evidence of the thirteen other counts with which he was initially charged but which were later dismissed pursuant to his motions for judgment of acquittal at the close of the state's case. Defendant next contends that the trial justice should have granted his motion to continue the trial for one week in order to allow him to obtain a written transcript of the suppression hearing for use at his jury trial. Last, he contends that the trial justice abused his discretion in excluding a defense witness as a sanction for his violation of Rule 16(c) of the Superior Court Rules of Criminal Procedure. We shall discuss these objections seriatim.

■ The defendant maintains that the trial justice erred when he permitted certain testimony to be elicited from the defendant's girlfriend, Michelle, with respect to break-ins of which the defendant was acquitted by the trial justice. He asserts that this "other acts" evidence was inadmissible. We disagree. The trial justice concluded that this evidence was admissible to show the defendant's common scheme and plan. In *State v. Sepe,* 122 R.I. 560, 410 A.2d 127 (1980), we explained that evidence of other acts would be admissible to show "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others * * *." *Id.* at 565, 410 A.2d at 130. We agree with the trial justice that the similarity of the crimes here demonstrated the defendant's plan or common scheme and that when joined with the limiting cautionary jury instruction given by the trial justice, the evidence concerning those other house break-ins was both proper and admissible. We also point out that evidence of the defendant's other acts could hardly be considered prejudicial in view of the fact that the defendant's confessions which alluded to those other break-ins were properly introduced during the trial.

■ The defendant next suggests that the trial justice should have postponed the start of his trial for one week in order to allow him to obtain a written transcript of the suppression hearing testimony so that he might be able to impeach the police officers at his jury trial with any prior inconsistent testimony. We do not believe that the trial justice's decision constitutes an abuse of his discretion. This Court has yet to hold that a trial justice is required to continue a trial in order to permit the preparation of the transcript of a suppression hearing so that it might possibly be used by the defendant to show possible inconsistencies in testimony that might be given at his or her later jury trial. We decline to do so at this time on the facts before us.

■ Finally the defendant asserts that the trial justice abused his discretion in excluding the testimony of his sister as a sanction for his having violated Rule 16(c) by not naming her as a potential trial witness. The facts show that defense counsel first gave notice of the defendant's intention to present the defendant's sister to testify regarding his drug addiction only after the state had rested its case, thereby taking the state entirely by surprise and making it difficult if not impossible for the state to effectively cross-examine and to rebut her proffered testimony regarding the defendant's diminished capacity because of his drug addiction. The state,

as well as the defendant, has a clear right to rely upon compliance with Rule 16 discovery requirements and obligations. We conclude that the trial justice did not err and that he properly considered the sanction factors available to him as discussed in *State v. Coelho*, 454 A.2d 241 (R.I.1982). We additionally point out that in any event, the defendant was not prejudiced by the trial justice's ruling because any testimony that would have been elicited from the sister would have been simply cumulative to the testimony given by the defendant's girlfriend, Michelle, who had already testified and brought to the jury's attention the defendant's drug addiction and its alleged effect upon the defendant.

For the foregoing reasons the defendant's appeal is denied and dismissed, and his judgment of conviction is affirmed. The papers in this case are remanded to the Superior Court.

GOLDBERG, J., did not participate.