STATE

v.

William PAGE.

No. 97–517–C.A.

Supreme Court of Rhode Island.

April 8, 1998.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Mark L. Smith, North Smithfield, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of William Page (defendant or Page) from a judgment of conviction of murder in the first degree for which he received a sentence of life imprisonment without the possibility of parole. The defendant was also sentenced to an additional ten years, to be served concurrently, for committing a crime of violence while armed with a firearm. For the following reasons, we sustain the convictions. A summary of the pertinent facts follows, with additional details provided in the analysis of the issues raised by this appeal.

### Facts and Procedural History

On March 3, 1995, defendant, then aged eighteen, was indicted along with another youth, Michael Lambert (Lambert),[1] for the murder of Sylvester Gardiner (Gardiner). Gardiner was a homeless man who lived under the I–95 overpass near Francis Street in downtown Providence and became the victim of a particularly brutal and savage beating at the hands of Page, who was carrying a BB pistol, and Lambert on Thanksgiving Day, November 24, 1994. Elizabeth Laposata, M.D., the medical examiner who performed the autopsy on Gardiner, described his injuries as the worst she had ever seen and noted that she would have thought he had been hit by a train had she been told that his body was found near train tracks. Gardiner's facial bones had been completely destroyed and an ax handle, on which defendant's fingerprints were found, was impaled in Gardiner's face. The beating was so severe that one of Gardiner's broken teeth was found lodged in his lungs.

The defendant and Lambert were both arrested on November 26, 1994. The two suspects were questioned separately by the police, and after each had been advised of his constitutional rights, he gave a statement that implicated the two of them in Gardiner's murder.

The defendant subsequently moved to suppress the statements that he had given to the police. The Superior Court heard his motion on November 14, 1995. Three Providence police officers who had been involved in defendant's apprehension and interrogation testified at the hearing. The two officers who interviewed Page explained the manner in which defendant had been advised of his Miranda rights and described how they questioned him about Gardiner's death. The defendant had also signed a written statement waiving his Miranda rights prior to his interrogation, and that waiver was offered as evidence at the hearing.

The defendant testified on his own behalf at the suppression hearing. He stated that he had consumed considerable amounts of alcohol and marijuana in the hours prior to his arrest, and he asserted that his consequent inebriation rendered his waiver of his constitutional rights unknowing and involuntary. The defendant also alleged that he had requested counsel but was denied access to an attorney by the police. He acknowledged, however, that his request for an attorney took the form of his saying, "Whaz up with a lawyer?" and that this question preceded his being informed of his rights and his signing of the waiver form. Page conceded that he was fully advised of his rights by the police and that he understood them. The Superior Court denied defendant's motion to suppress

1. This Court has previously considered and denied Michael Lambert's appeal from his conviction of murder in the second degree for the part he played in Gardiner's death. For a more detailed rendition of the facts as they were adduced at Lambert's trial, see State v. Lambert, 705 A.2d 957 (R.I.1997).

his statement at the conclusion of the one-day hearing.

Following the denial of his motion to suppress, defendant waived his right to a jury trial and was tried before a justice of the Superior Court on stipulated proof that consisted solely of documents and exhibits. Page was convicted in December of 1995, but the trial justice deferred sentencing until May 3, 1996, following the conclusion of Lambert's trial. Page then filed his appeal with this Court, claiming three errors: (1) that the trial justice committed reversible error by denying Page's motion to suppress the statement he had given to police shortly after his arrest; (2) that his concurrent ten-year sentence is cruel and unusual, in violation of the Eighth Amendment to the United States Constitution and article I, section 8, of the Rhode Island Constitution; and (3) that he was denied the effective assistance of counsel during his trial and sentencing and was thereby deprived of his right to an attorney as guaranteed by the Sixth Amendment to the United States Constitution.

### Motion to Suppress Defendant's Statement

The defendant contended that his inculpatory statement was obtained by the police in violation of the prophylactic rules enunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that his signed waiver of his constitutional rights was invalid. He argued that his statement was the result of coercion exercised upon him by the police officers, and he maintained that he was so incapacitated by drugs and alcohol at the time he gave the statement that he was incapable of voluntarily waiving his right to remain silent. The defendant also insisted that the police wrongfully interrogated him after he had requested an attorney.

■ In reviewing a trial justice's denial of a criminal defendant's motion to suppress a confession, we review the justice's factual findings deferentially under a "clearly erroneous" standard. The "voluntariness" of a confession is a legal question, however, *see Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405, 411 (1985), and in accordance with the dictates of *Ornelas v.*

*United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), this Court undertakes a *de novo* review of questions of law and mixed questions of law and fact insofar as those issues involve constitutional issues. *See State v. Nardolillo*, 698 A.2d 195 (R.I. 1997); *State v. Campbell*, 691 A.2d 564 (R.I. 1997).

■ "A defendant's confession is only admissible against him if the state can first prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights expressed in *Miranda v. Arizona*." *Nardolillo*, 698 A.2d at 200. As the hearing justice noted in denying defendant's motion to suppress, Page himself conceded that the police had apprised him of his *Miranda* rights, and he acknowledged that he had understood them. The defendant did not dispute that he signed the waiver form after having read it and that he put his initials next to each line that stated each of his rights.

The defendant argued, however, that he was so incapacitated by his ingestion of drugs and alcohol that he could not voluntarily waive his rights even though he understood them. This assertion was belied by the undisputed fact that he was coherent and responsive during the police interview. All three police officers who testified at the hearing, each of whom had had extended contact with defendant on the night in question, reported that they did not notice any signs or indications that defendant might have been under the influence of intoxicants. The hearing justice expressly found that defendant's testimony about his consumption of drugs and alcohol was not credible.

Moreover, when questioned directly about the effect the drugs and alcohol had had upon him, defendant merely alleged that the intoxicants made it more difficult for him to remember, at a later time, what had happened during the questioning.

"Q. And, did your intoxication, ingestion of drugs and alcohol, cause you to have difficulty understanding what was happening?

"A. Yes. At the time I maybe, probably would have understood what you were say-

ing, but later date [*sic*] after everything was over I probably would have forgot about it."

The defendant never alleged that his cognitive functions were impaired at the time of the questioning itself.

▮ Finally, we note that "proof of intoxication alone, absent a showing of coercive police activity, is not sufficient to suppress a confession." *Brown v. Moran*, 534 A.2d 180, 183 (R.I.1987); *see also Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986) ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."). In this case, even if defendant's claims regarding the state of his inebriation were accepted in their entirety, defendant's motion to suppress could not be sustained because he made no showing of coercive police activity. Page alleged only that prior to his signing the waiver form, the police officers told him, "Your friend's up there ratting. Guy's up there, couple friends up there snitching on you." This Court has held that "law enforcement officers may inform a suspect, truthfully or otherwise, of the evidence against him." *State v. Marini*, 638 A.2d 507, 513 (R.I.1994) (citing *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684, 693 (1969)). It is our conclusion that defendant was not subjected to coercive police activity, and our *de novo* review of the record supports our determination that Page waived his *Miranda* rights and gave his statement to police freely and voluntarily.

▮ The defendant also contended that his statement should have been suppressed because it was obtained in violation of his right to counsel. According to Page, he had requested a lawyer prior to signing the waiver form and giving his statement. In response to questioning from his own attorney at the hearing on his motion to suppress, defendant offered the following description of the request for counsel that he allegedly made while at the police station.

"Q. You had been arrested many times before, is that fair to say?

"A. I guess so.

"Q. You have had a lawyer before?

"A. Yes, sir.

"Q. And, did you understand what your rights were?

"A. Yes, sir; at that point in time as I was reading them, yes sir. I pretty much understood them.

" * * *

"Q. Tell me the words you used in asking for a lawyer?

"A. 'Whaz up with a lawyer,' and—

"Q. You have to repeat that.

"A. 'Whaz up with a lawyer?'

"Q. 'Whaz up with a lawyer?'

"A. Yes, sir. Meaning, 'Is there a lawyer? Where I can get appointed a lawyer.' "

The hearing justice subsequently confirmed that the statement "Whaz up with a lawyer?" was the entirety of Page's alleged request.

In contrast to defendant's testimony, the two police officers who interviewed defendant denied that he had ever mentioned a lawyer in their presence. The hearing justice, having had the opportunity to assess the credibility of the witnesses, concluded:

"I don't believe a word of what Mr. Page said about asking for a lawyer. * * * I find, without question in my mind, well beyond the threshold test of clear and convincing evidence, I find beyond any question in my mind that this defendant in all respects waived his rights under *Miranda;* that he expressly, explicitly, impliedly in every possible manner was content to speak with the officers without a lawyer, never asked for a lawyer, never made a passing reference to a lawyer."

Even assuming, arguendo, that defendant did make the alleged comment "Whaz up with a lawyer," in our opinion this passing reference did not constitute a sufficient invocation of the right to counsel. *See State v. Peabody*, 611 A.2d 826, 837 (R.I.1992); *see also United States v. Jardina*, 747 F.2d 945, 949 (5th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985). Because of defendant's familiarity with the procedures during an arrest, Page's words

could reasonably have been interpreted as a request by him for an explanation of his right to counsel, the affirmation of which, according to defendant's own testimony, in fact followed. Having been advised of his right to counsel and told that an attorney would be provided for him at the state's expense if he could not afford one, defendant chose to speak with the police without any further question or request for a lawyer. On these facts, we conclude that defendant was well informed of his right to counsel and chose to waive it rather than to invoke it. Therefore, the police did not elicit defendant's statement in violation of that right.

In denying defendant's motion to suppress his statement, the trial justice concluded that he was

> "satisfied from all the credible evidence before me, and from the totality of circumstances, that this defendant, beyond all peradventure, understood all of his *Miranda* rights and that he voluntarily, without coercion of any kind, and without a desire or request for counsel decided to speak with the officers, and that his decision to do so was a product of his free and intelligent choice."

Hence, having carefully reviewed the record *de novo*, we concur with the trial justice's conclusion. Accordingly, we reject defendant's appeal on this issue and affirm the trial justice's denial of the motion to suppress.

### Ten–Year Concurrent Sentence

██ The defendant also argued on appeal that the additional ten-year sentence, to be served concurrently with his sentence of life without the possibility of parole, constituted cruel and unusual punishment, in violation of his rights under the Eighth Amendment. The defendant's argument in this respect was predicated upon his fundamental misunderstanding of the reason for the imposition of the sentence. The defendant contended that the ten-year term was an additional sentence pursuant to Rhode Island's habitual offender

statute, G.L.1956 § 12–19–21, when in fact the ten-year sentence was imposed as the sentence for his conviction on an entirely separate count, namely, that of committing a crime of violence while armed with a firearm. Because defendant has appealed from a sentence that was not in fact imposed, we need not discuss this issue any further. We do note, however, that defendant concedes that he has failed to comply with our consistent instruction in prior cases that "a Rule 35 motion determination is a prerequisite to an appeal to this court as to the propriety of a sentence." [2] *State v. Baptista*, 632 A.2d 343, 345 (R.I.1993) (citing long line of cases for this proposition); *see also State v. Charette*, 688 A.2d 1286, 1289 (R.I.1997). Even were the nature of defendant's sentencing as he alleged, his appeal of the sentence to this Court would be premature.

### Effectiveness of Counsel

██ Last, the defendant has argued that he was denied the effective assistance of counsel at his trial and sentencing. In respect to this issue, this Court has enunciated a clear rule, namely, that a claim of ineffective assistance of counsel should be raised by means of a petition for postconviction relief. Accordingly, this Court has consistently explained that we shall only consider a claim of ineffective assistance of counsel on direct appeal if the claim is "based on specific rulings by the trial justice," *State v. Gonsalves*, 476 A.2d 108, 112 (R.I.1984), inasmuch as this rule "is 'consistent with the fundamental principle that only specific rulings of a trial justice are reviewable on direct appeal.' " *Id.* (quoting *State v. Levitt*, 118 R.I. 32, 40, 371 A.2d 596, 600 (1977)). Because we lack "a fully developed record and a decision of the Superior Court regarding whether defense counsel's alleged failings were a 'genuine manifestation of ineffective assistance,' " *State v. Tooher*, 542 A.2d 1084, 1088 (R.I. 1988) (quoting *State v. Farlett*, 490 A.2d 52, 54 (R.I.1985)), we decline to review the de-

---

**2.** Rule 35 of the Superior Court Rules of Criminal Procedure provides in pertinent part that "[t]he [Superior] court may correct a sentence imposed in an illegal manner and it may reduce any sentence within one hundred twenty (120)

days after the sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal * * *."

fendant's claims in respect to the insufficiency of his prior representation, without prejudice to his seeking postconviction relief in the Superior Court, if he sees fit to do so.

## Conclusion

Consequently, for the foregoing reasons, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court, to which the record in this case may be returned.

BOURCIER, J., did not participate.