## In re JOSEPH B.

No. 2000–114–Appeal.

Supreme Court of Rhode Island.

May 15, 2003.

Lauren Sandler Zurier, Aaron Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, JJ., WEISBERGER, C.J.(Ret), and SHEA, J. (Ret.).

## O P I N I O N

PER CURIAM.

This appeal from the denial of a motion to suppress came before the Court for oral argument on March 11, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time.

The sole issue on appeal is whether the juvenile respondent, Joseph B., understood his *Miranda* rights[1] and the legal consequences of waiving those rights when he made a statement to Det. Robert Fitzpatrick of the Juvenile Division of the Providence Police Department. He contends that the Family Court justice erred in denying his motion to suppress the statement in which he admitted that on December 12, 1999, he engaged in sexual contact with a six-year-old girl. A petition to adjudge Joseph as a delinquent later was filed in the Family Court on grounds that he committed first-degree child sexual molestation.[2] Before a hearing on the petition, defense counsel filed a motion to suppress and, at a hearing on the motion, the following facts were elicited.

On December 13, 1999, respondent, accompanied by his mother, went to the Providence police station to be interviewed by Det. Fitzpatrick in the Juvenile Office. Detective Fitzpatrick previously had encountered respondent's mother in a situation involving another sibling of the respondent. He stated that normally he asks an accompanying family member whether there is any reason to believe that the juvenile would have difficulty understanding and, if necessary, he makes appropriate accommodations. Before the interview commenced, and in accordance with his standard procedure, Det. Fitzpatrick produced a juvenile rights form, carefully read each line to respondent and his mother, and then permitted them individually to read the form to themselves. He then left the room, leaving respondent and his mother alone.

Shortly thereafter, Det. Fitzpatrick returned to the room and asked respondent to initial each line to indicate that he understood his rights. The respondent did so, and then both he and his mother signed the form. Detective Fitzpatrick testified that respondent did not appear to be under the influence of drugs or alcohol. Rather, he testified that Joseph appeared alert and answered every question when posed. He observed that at times, Joseph even was "a little sarcastic."

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In his statement, respondent told Det. Fitzpatrick that he pulled down his boxer shorts; the victim's panties were down to her ankles; "he stuck his penis inside of her[;]" and that it was only after the victim's father walked into the room and caught him in the act that he stopped.

After hearing Det. Fitzpatrick's testimony, the Family Court justice denied respondent's motion to suppress.[3] Thereafter, the delinquency hearing was conducted. When the hearing concluded, the Family Court justice adjudicated Joseph as a delinquent and later committed him to the state training school until further order of the court.

On appeal, defense counsel does not dispute Det. Fitzpatrick's testimony concerning his administration of respondent's rights; rather, he asserts that Det. Fitzpatrick "failed to sufficiently establish Joseph's ability to understand the *Miranda* advisement * * * [and] the legal consequences of waiving his rights." To support this assertion, defense counsel points out that Det. Fitzpatrick was unable to "state his impression of Joseph's reading comprehension[.]"

■■■ "In reviewing a trial justice's denial of a criminal defendant's motion to suppress a confession, we review the justice's factual findings deferentially under a clearly erroneous standard." *State v. Kryla*, 742 A.2d 1178, 1183 (R.I.1999) (quoting *State v. Page*, 709 A.2d 1042, 1044 (R.I. 1998)). However, we review the voluntariness of a confession on a *de novo* basis because "[t]he 'voluntariness' of a confession is a legal question." *Id.* "A defendant's confession is only admissible against him if the state can first prove by clear and convincing evidence that the defendant knowingly * * * and voluntarily waived his constitutional rights expressed in *Miranda v. Arizona.*" *Id.* at 1183–84 (quoting *State v. Nardolillo*, 698 A.2d 195, 200 (R.I.1997)).

■■ "It is well-settled that 'the validity of a juvenile's waiver of his or her rights should be evaluated in light of the totality of the circumstances surrounding that waiver.'" *Id.* at 1184 (quoting *State v. Campbell*, 691 A.2d 564, 567 (R.I.1997)). We previously have observed that:

> "the totality-of-the-circumstances test requires consideration of all of the circumstances surrounding the interrogation of a juvenile suspect, including the juvenile's age, experience, education, and intelligence, his or her capacity to understand the Miranda warnings and the consequences of waiver, and the presence of a parent, a guardian, or an interested adult." *Id.* (quoting *Campbell*, 691 A.2d at 567). *See also Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212 (1979).

In denying respondent's motion to suppress, the Family Court justice found that Det. Fitzpatrick followed "appropriate procedures when he took the statement from the respondent." He noted that "respondent's mother was present and Detective Fitzpatrick had previous experience with his mother[.]" In addition, "[t]here was nothing evident to Detective Fitzpatrick that would indicate that mother wasn't an appropriate guardian or able to appropriately protect her son in that situation." He found that before both respondent and his mother signed the form, respondent's rights were read aloud and, after they read the rights form to themselves, they both stated that they understood its contents. He concluded that he saw:

> "nothing in the procedure that was followed or anything that would indicate to the Detective that respondent was unable to comprehend or understand the rights that he was signing and giving up when he made that statement at that time."

■■ After our *de novo* review of the totality of the circumstances, we conclude that respondent knowingly and voluntarily

---

**3.** The respondent and his mother did not testify. Only Det. Fitzpatrick testified.

gave up his *Miranda* rights. Although no inquiry was made into his educational background, particularly his reading-comprehension ability, no evidence was presented at the suppression hearing to even suggest that respondent possessed cognitive problems. Moreover, we agree with the Family Court justice that the law does not "require the police to give or make independent assessments of the respondent's reading comprehension or level of intelligence." Furthermore, even if respondent did possess some kind of reading comprehension difficulty, the record reveals that his rights also were read aloud and that he specifically admitted his understanding of those rights.

Consequently, and for the foregoing reasons, respondent's appeal is denied and dismissed and the judgment of the Family Court is affirmed. The papers of the case are to be returned to the Family Court.