ATIBA M. MOORE, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 43248

January 19, 2006                                     126 P.3d 508

*Philip J. Kohn*, Public Defender, and *Sharon G. Dickinson* and *Darin F. Imlay*, Deputy Public Defenders, Clark County, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether presenting a stolen credit card, without the card being processed or goods obtained, is sufficient use to establish fraudulent use of a credit card.[1] We conclude that presentment alone does not constitute use and reverse Moore's conviction for fraudulent use of a credit card.

---

[1]NRS 205.760.

However, we conclude that sufficient evidence supports Moore's conviction for possession of a credit card without the cardholder's consent; that the State proved beyond a reasonable doubt that Moore possessed the requisite intent for burglary; that Moore's failure to object to the district court's selection of the alternate jurors precludes review; and that the district court properly considered the prior convictions in adjudicating Moore a small habitual criminal.

## FACTS

Appellant Atiba M. Moore entered a Wal-Mart store in Las Vegas, and drew the attention of Michael Taggart, a Loss Prevention Specialist for Wal-Mart. Taggart followed Moore on the store's surveillance system. Taggart observed Moore selecting merchandise in the men's and electronics' departments "without . . . rhyme or reason" and called Djoana Guerrero, a cashier stationed in the electronics' department.

Taggart alerted Guerrero that he suspected Moore was going to pay for merchandise with a credit card. Taggart instructed Guerrero to call him if Moore gave her a credit card for payment without proper identification and instructed Guerrero to intentionally "take [her] time ringing [Moore] up."

Moore approached Guerrero's register and presented her with a credit card bearing the name Alma Q. Rangel to pay for goods with a value in excess of $300. When asked for identification, Moore looked through his pockets and responded that he did not have any identification. Guerrero said that she would have to get approval for the purchase from her Customer Service Manager, who in turn, took the credit card from Guerrero and brought it to Taggart for inspection. Although the Wal-Mart sales receipt listing the merchandise that Moore presented for purchase reflects a cash sale, the credit card was never processed and Moore never obtained the goods.

Taggart learned that the credit card was reported stolen and detained Moore. Moore told Taggart he was given permission to use the credit card by its owner but was unable to verify his claim. Thereafter, a police officer arrived at the scene and arrested Moore after verifying his identity through records, the Shared Computer Operations for Protection and Enforcement (SCOPE), the National Crime Information Center (NCIC), and physical descriptors.

Moore was charged by information with one count of burglary,[2] one count of fraudulent use of a credit card,[3] and one count of possession of a credit card without the cardholder's consent.

---

[2]NRS 205.060.

[3]NRS 205.760.

Based on Moore's three prior criminal convictions, he was also charged as a small habitual criminal.[4]

A jury found Moore guilty on all three felony counts, and the district court adjudicated Moore as a small habitual criminal and imposed a sentence of 220 months with a minimum parole eligibility of 60 months on each count with the second count to run consecutive to the first, but the third count to run concurrent to the second.[5]

## DISCUSSION

### Fraudulent use of a credit card

The criminal information filed in district court charged Moore with fraudulent use of a credit card and alleged that Moore, with the intent to defraud, used a credit card he was not authorized to use by *presenting* the credit card for the purpose of obtaining goods. Jury instruction 3 repeated the language in the information, and jury instruction 10 stated that "[a] person who, with the intent to defraud, uses a credit card where the person possesses the credit card without the consent of the cardholder is guilty of Fraudulent Use of Credit Card."

Moore argues that the information and jury instructions 3 and 10 fail to properly describe the elements of the crime of fraudulent use of a credit card because the credit card was never processed and Moore never obtained the goods he tried to purchase.

NRS 205.760(1)(a) provides that a person who, with the intent to defraud, "[u]ses a credit card or debit card to obtain money, goods, property, services or anything of value where the credit card or debit card was obtained or retained in violation of NRS 205.690 to 205.750, inclusive" is guilty of a category D felony.

This case presents an issue of first impression in Nevada: does the presentment of a stolen credit card for the purchase of goods constitute fraudulent use of a credit card if the card is not processed and no goods are obtained? We conclude that presentment alone of a stolen credit card is not sufficient to establish fraudulent use of a credit card.

The issue presented depends on an interpretation of NRS 205.760. Questions of statutory construction are reviewed by this

---

[4]NRS 207.010(1)(a).

[5]The information stated the counts as follows: count one—burglary, count two—fraudulent use of a credit card, and count three—possession of a credit card without the cardholder's consent.

court de novo.[6] Unless a statute is ambiguous, we attribute the plain meaning to the statute's language.[7] "An ambiguity arises where the statutory language lends itself to two or more reasonable interpretations."[8] Where a statute is deemed ambiguous, the Legislature's intent controls.[9] "We look to reason and public policy to discern legislative intent."[10] Finally, the rule of lenity demands that ambiguities in criminal statutes be liberally interpreted in the accused's favor.[11]

Here, the word "use" in NRS 205.760(1)(a) is ambiguous because one might reasonably interpret it to mean presenting a credit card for payment or to require the credit card to be processed and the goods to be obtained. The legislative history is silent on what constitutes use under the statute so we must determine the statute's intent through reason and public policy.

Other jurisdictions have interpreted similar statutes.[12] In *Davidson v. State*, the Supreme Court of Arkansas held that obtaining the goods is a required element to support a conviction for fraudulent use of a credit card.[13] There, the defendant gave a storeowner a stolen credit card but was declined the sale after failing to provide identification, and on another occasion he tried to use a stolen credit card to make a purchase but the credit card was declined. Neither transaction was completed nor were goods obtained.[14]

The Arkansas fraudulent use statute interpreted in *Davidson* is similar to Nevada's and states that "[t]he offense of fraudulent use of a credit card is committed if a person, with the purpose to defraud, 'uses a credit card to obtain property or services with knowledge that: (a) the card is stolen.' "[15] The Arkansas statute categorizes the crime as a Class C felony if the value of the goods "obtained" exceeds $100, otherwise it is a Class A misdemeanor.[16] Applying the rule of lenity, the Arkansas Supreme

---

[6]*Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004).

[7]*Id.*

[8]*State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004).

[9]*Id.*

[10]*Id.*

[11]*Hernandez v. State*, 118 Nev. 513, 523-24, 50 P.3d 1100, 1107-08 (2002).

[12]*See Davidson v. State*, 810 S.W.2d 327 (Ark. 1991); *State v. Gonsalves*, 476 A.2d 108 (R.I. 1984); *State v. Williams*, 389 So. 2d 384 (La. 1980); *People v. Tarlton*, 434 N.E.2d 1110 (Ill. 1982); *Jackson v. Commonwealth*, 972 S.W.2d 286 (Ky. Ct. App. 1997).

[13]810 S.W.2d at 328.

[14]*Id.*

[15]*Id.* (quoting Ark. Code Ann. § 5-37-207 (1987)).

[16]*Id.* (citing to Ark. Code Ann. § 5-37-207(b) (1987)).

Court determined that goods must actually be obtained to satisfy the "use" element.[17] Thus, the defendant's actions constituted merely an attempt to use a stolen credit card.[18] As further support for its analysis, the court noted that the statute conditioned the degree of the crime on the value of the goods obtained.[19] Consequently, if no goods were obtained, the crime of fraudulent use of a credit card could not occur.[20]

The Supreme Court of Rhode Island has reached a different result on a similar set of facts but under a slightly different statute. In *State v. Gonsalves*, the defendant presented an altered credit card to purchase a pair of jeans at a clothing store.[21] The alterations to the card were noticed, and the defendant proceeded to another register where he paid cash for the merchandise and left the store.[22] The defendant was convicted under the state's fraudulent use of a credit card statute, which states that a person who, with the intent to defraud, uses a credit card for the purpose of obtaining goods *or* who obtains goods by representing that he is the cardholder is guilty of fraudulent use of a credit card.[23] The Rhode Island statute, like the Arkansas statute, contained a provision that based the degree of the offense on the value of the goods obtained.[24]

The Rhode Island court focused on the statute's disjunctive wording of "or" as proscribing two types of conduct that constitutes fraudulent use of a credit card. First, conduct that involves use of the credit card for the purpose of obtaining goods, and second, conduct by a person who actually obtains goods by falsely representing that he is the cardholder.[25] Acknowledging that the statute's penalty provision concerned solely the value of the goods obtained, the court nonetheless interpreted the statute broadly to include unsuccessful attempts to obtain goods using a stolen credit card.[26] The court reasoned that the legislative intent was to prevent unlawful use, including unsuccessful attempts to use, and therefore use would include presenting the credit card.[27] Thus, the

---

[17]*Id.*

[18]*Id.* at 328-29.

[19]*Id.* at 328.

[20]*Id.*

[21]476 A.2d at 109.

[22]*Id.*

[23]*Id.* at 110 (quoting R.I. Gen. Laws § 11-49-4 (1956)).

[24]*Id.*

[25]*Id.* at 111.

[26]*Id.* at 111-12.

[27]*Id.* at 111.

defendant's conviction for fraudulent use was sustained based on his unsuccessful attempt to obtain the goods.[28]

We find the Arkansas Supreme Court's interpretation of the use element more persuasive. We believe this approach to be consistent with a stricter reading of our criminal statutes required by the rule of lenity. The rationale behind such statutes is to prevent monetary losses to merchants and credit card companies suffered at the hands of fraudulent purchasers.[29]

Critical to the Rhode Island decision was the court's decision to add the language "or sought to be obtained" to the statute's penalty provision under a rule of construction that allows a court to modify the language of a statute to better give effect to the legislature's intent.[30] We decline to supplement our criminal statute because that would be contrary to the rule of lenity. While our statute does not vary the degree of the offense based on the value of the goods obtained, it does impose a mandatory restitution requirement.[31] Clearly, if no goods are obtained, then no restitution could be ordered. Thus, goods must be actually obtained in order to complete the crime of fraudulent use of a credit card.

In Nevada, for fraudulent use of a credit card to occur, the credit card must be processed and the account charged; mere presentment cannot suffice. While Moore was undeniably attempting to use the credit card by presenting it for payment, the credit card was not processed, and the goods were not obtained. Thus, the information improperly charged Moore with, and jury instructions 3 and 10 improperly instructed the jury on, the crime of fraudulent use of a credit card. Accordingly, we reverse Moore's conviction on count two of the information and his sentence on that count as a small habitual criminal.

*Double jeopardy*

The jury also convicted Moore of possession of a credit card without the cardholder's consent pursuant to NRS 205.690.

---

[28]*Id.* at 111-13. Notably, in making its decision, the Rhode Island court relied in part on the Illinois Court of Appeals' decision in *People v. Gibson*, 425 N.E.2d 1197 (Ill. App. Ct. 1981), which had been reversed. *People v. Gibson*, 435 N.E.2d 1153 (Ill. 1982).

[29]We note that prior to its amendment in 1985, NRS 205.760(1)(a) read: "[u]ses a credit card for the purpose of obtaining" compared to its current language which reads "[u]ses a credit card . . . to obtain." We believe this further demonstrates that the element of use requires that the credit card is processed and the goods obtained.

[30]*Gonsalves*, 476 A.2d at 111.

[31]NRS 205.760(1) ("In addition to any other penalty, the court shall order the person to pay restitution.").

Moore argues that possession is a lesser-included offense of fraudulent use and should, therefore, be reversed on double jeopardy grounds. The State concedes that possession is a lesser-included offense of fraudulent use of a credit card but contends the possession conviction should be affirmed.

In concluding that a defendant cannot be convicted of both theft and possession of the property stolen, we addressed the proper relief when a defendant has been convicted of both crimes:

> Where the accused cannot be convicted of both crimes, both convictions are reversible when the reviewing court cannot ascertain what verdict would have been returned by a properly instructed jury. However, where it is ascertainable upon which count, if either, a properly instructed jury would have convicted the defendant, a new trial would result in an unnecessary expenditure of judicial resources.[32]

The State produced sufficient evidence to convict Moore of possession of a credit card without the cardholder's consent. Moore was arrested in a Wal-Mart store while attempting to use a credit card that did not belong to him. While detained, Moore claimed that he knew the owner of the credit card and was authorized to use the credit card. At trial, the owner of the credit card testified that she noticed her purse was missing a few hours before Moore was arrested and that she did not know Moore.

We conclude that our reversal of Moore's fraudulent use conviction does not affect the possession conviction because the elements of possession were sufficiently established for a properly instructed jury. Accordingly, Moore's conviction for possession of a credit card without the cardholder's consent is affirmed.

*Burglary*

Moore also contends that the State failed to prove beyond a reasonable doubt that he possessed the requisite intent to commit a burglary. We disagree.

A reviewing court will not disturb a verdict on appeal if it is supported by substantial evidence.[33] A person who enters any shop, warehouse or store, with the intent to commit any felony, is guilty of burglary.[34] "Intention is manifested by the circumstances

---

[32]*Point v. State*, 102 Nev. 143, 147, 717 P.2d 38, 41 (1986) (citations omitted), *disapproved of on separate grounds by Stowe v. State*, 109 Nev. 743, 857 P.2d 15 (1993).

[33]*Domingues v. State*, 112 Nev. 683, 693, 917 P.2d 1364, 1371 (1996) (citing *Nix v. State*, 91 Nev. 613, 614, 541 P.2d 1, 2 (1975)).

[34]NRS 205.060(1).

connected with the perpetration of the offense, and the sound mind and discretion of the person accused."[35] Whether a defendant enters a building with the requisite intent for burglary is for the jury to decide.[36] " 'As in any other case where the intent is material, the intent need not be proved by positive or direct evidence, but may be inferred from the conduct of the parties and the other facts and circumstances disclosed by the evidence.' "[37]

Moore entered a Wal-Mart store in possession of a stolen credit card, which he tried to use to purchase over $300 in merchandise. Taggart testified that Moore's behavior of selecting items "without . . . rhyme or reason" was consistent with fraudulent credit card use. Moore presented a credit card to the cashier to pay for the items he selected. The credit card was reported stolen, and the owner testified that she did not know Moore. Thus, we conclude that the circumstantial evidence was sufficient for the jury to properly determine that Moore possessed the requisite intent to commit a felony upon entering Wal-Mart. Accordingly, Moore's conviction for burglary is affirmed.

## Alternate juror selection

At the end of jury selection, the district court spoke with the attorneys about the process for selecting alternate jurors. The attorneys were informed that the alternate jurors would be "blind alternates." No objections were voiced to this procedure and none of the jurors were replaced, disqualified, or substituted by an alternate juror during the trial or deliberations. Moore argues that the district court's selection of alternate jurors failed to comply with NRS 175.061(4), which requires separate preemptory challenges for alternate jurors.[38]

Failure to object during trial generally results in a waiver thereby precluding appellate consideration of the issue.[39] Despite

---

[35]NRS 193.200.

[36]*Crane v. State*, 88 Nev. 684, 686-87, 504 P.2d 12, 13 (1972).

[37]*Larsen v. State*, 86 Nev. 451, 453, 470 P.2d 417, 418 (1970) (quoting *State v. Thompson*, 31 Nev. 209, 216, 101 P. 557, 560 (1909)).

[38]NRS 175.061(4) states,

> Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impaneled, and two peremptory challenges if three or four alternate jurors are to be impaneled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by statute may not be used against an alternate juror.

[39]*Rippo v. State*, 113 Nev. 1239, 1259, 946 P.2d 1017, 1030 (1997) (citing *Garner v. State*, 78 Nev. 366, 372-73, 374 P.2d 525, 529 (1962)).

a failure to object, this court has discretion to review a plain error that affected the defendant's substantial rights.[40] "Normally, the defendant must show that an error was prejudicial in order to establish that it affected substantial rights."[41]

Moore's failure to object to the district court's method of selecting the alternate jurors precludes review. The district court's process to select the alternate jurors did violate NRS 175.061. However, we conclude that the failure to follow the procedures outlined in NRS 175.061 did not affect Moore's substantial rights.[42]

*Habitual criminal*

At sentencing, Moore was adjudicated a small habitual criminal based on three prior criminal convictions and sentenced to a term of imprisonment of 220 months with a minimum parole eligibility of 60 months on each count. Moore argues that the district court relied on improper information in adjudicating him a small habitual criminal when the State introduced a 1991 conviction from Georgia, which contained an impermissible reference to another criminal case.

Any person who is convicted of a felony in this state, who has previously been convicted of two other felonies in any state, may be adjudicated a habitual criminal.[43]

The State submitted three prior convictions for the district court to use in adjudicating Moore a habitual criminal. The 1991 conviction from Georgia contained a reference to another conviction, which was not properly presented to the court for habitual criminal adjudication. However, at the sentencing hearing, the State relied on three of Moore's prior criminal convictions and told the district court it was not relying on the conviction referenced in the 1991 judgment.[44]

---

[40]*Gallego v. State*, 117 Nev. 348, 365, 23 P.3d 227, 239 (2001).

[41]*Id.*

[42]*See also Morsicato v. Sav-On Drug Stores, Inc.*, 121 Nev. 153, 156 n.2, 111 P.3d 1112, 1115 n.2 (2005).

[43]NRS 207.010(1)(a).

[44]When asked to identify the prior convictions it was relying on, the State responded:

> [F]or the 1991, two counts of theft from the State of Georgia, I believe its 91CR4366. There's also some reference to another case, as referenced by P. and P., which is 91CR7341, which I believe is also theft, but I think we're relying on the [1991 conviction]. With respect to the two counts of burglary from 1995 the case no. 95CR2866. And then with the two counts of robbery here in Clark County, it would be case no. C166277.

We conclude the district court properly adjudicated Moore a small habitual criminal, which requires only two prior felony convictions. Accordingly, we affirm the district court's adjudication of Moore as a small habitual criminal.[45]

## CONCLUSION

We conclude that Moore's action of presenting a stolen credit card to obtain goods, when the credit card was neither processed nor the goods obtained, does not constitute fraudulent use of a credit card. Thus, we reverse Moore's conviction for fraudulent use of a credit card. Substantial evidence and independent grounds existed for the jury to convict Moore of possession of a credit card without the cardholder's consent. Thus, we affirm Moore's conviction for possession of a credit card without the cardholder's consent. We further conclude that the State proved Moore entered a Wal-Mart store with the requisite intent to support a conviction for burglary beyond a reasonable doubt. Thus, we affirm Moore's conviction for burglary. Finally, we conclude that the district court's adjudication of Moore as a small habitual criminal was proper but that the judgment of conviction erroneously states Moore's convictions were the result of a guilty plea.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[46]

MAUPIN and GIBBONS, JJ., concur.

---

[45]Nonetheless, we remand this case to correct the judgment of conviction, which incorrectly states that it was the result of a guilty plea.

[46]The corrected judgment of conviction should reflect that the sentence on count three is consecutive to the sentence on count one.