An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KENNETH SHAYE SIMMONS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 58016

**FILED**

SEP 2 6 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

### ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of sexual assault with the use of a deadly weapon, battery, and battery with the intent to commit sexual assault. Eighth Judicial District Court, Clark County; Doug Smith, Judge.

In January 2010, for as long as a week, Nicole Smith stayed in Barbara Bolt's studio apartment in the company of Bolt, appellant Kenneth Simmons, and at least two other people. On the final morning of her stay, only Smith, Simmons, and Bolt remained at the studio. When Smith tried to leave, violent altercations between Smith and Simmons ensued, including sexual acts, which Smith testified as occurring without her consent. Ultimately, Smith left the studio and reported to the police that Simmons raped her.

An investigation culminated in criminal charges against Simmons. By information, Simmons was charged with four counts of sexual assault with the use of a deadly weapon, one count of first-degree kidnapping with the use of a deadly weapon, one count of battery by strangulation, one count of battery with the intent to commit sexual assault, and one count of coercion with the use of a deadly weapon. The jury trial lasted four days, during which multiple witnesses, including Bolt and Smith, testified to the events that occurred shortly before and on the

13-28781

date of the crimes. The jury found Simmons guilty of all the crimes listed in the judgment of conviction.

Simmons now appeals, arguing that (1) the district court erred in overruling his objection to the racial composition of the jury venire, where two of sixty-five prospective jurors were African-American; (2) the district court violated NRS 175.061(5) and committed reversible error in selecting the alternate jurors at the end of trial by means of a lottery system; and (3) cumulative error warrants reversal. We conclude that cumulative error warrants reversal because Simmons' constitutional right to a fair and impartial jury was compromised when the district court gave inadequate consideration to Simmons' objection to the jury venire and inhibited Simmons' statutory right to assert peremptory challenges. Because of the cumulative error, we reverse the judgment of conviction.[1]

---

[1]Simmons also contests that (1) the district court erred in providing a video playback of testimony and abused its discretion in playing part of the witnesses' testimony without admonishing the jury as to how to consider it; (2) the district court erred by giving various jury instructions; (3) the district court abused its discretion in admitting a DNA report into evidence, denying Simmons' motion for a mistrial because of this evidence, precluding Simmons from admitting into evidence photographs of his genitalia, admitting testimony about him being in foster care, and precluding him from cross-examining Smith about a sexually transmitted disease; (4) the district court erred in admitting Smith's testimony on Simmons' statements about being in a gang and getting away with murder and rape; (5) the district court engaged in prejudicial ex parte communications with the jury and abused its discretion in denying a motion for an evidentiary hearing and a new trial because of these communications; (6) the district court erred in allowing a nurse to give her opinion that Smith's injuries were consistent with the reported sexual assault; (7) the district court erred in violating NRS 193.165(1) by failing to state on the record its basis for imposing the additional penalties for

*continued on next page . . .*

As the parties are familiar with the facts of this case, we do not recount them further except as necessary for our disposition.

*Simmons' objection to the racial composition of the jury venire*

Noting that two of the sixty-five prospective jurors were African-American, Simmons objected to the venire's racial composition, asserting that there was a violation of his Sixth Amendment right to a venire that included a fair cross-section of the community. Without asking the State for its response or asking Simmons if he could make a showing of a constitutional violation, the district court overruled the objection after stating that the selection process for the venire was random. As this issue implicates a constitutional right to a venire that is selected from a fair cross-section of the community, we review the issue de novo. *See Grey v. State*, 124 Nev. 110, 117, 178 P.3d 154, 159 (2008) (providing that de novo review applies to constitutional challenges).

A defendant "is entitled to a venire selected from a fair cross section of the community under the Sixth and Fourteenth Amendments of the United States Constitution." *Williams v. State*, 121 Nev. 934, 939, 125 P.3d 627, 631 (2005). The Constitution mandates that the "'venires from

---

. . . *continued*

Simmons' use of a deadly weapon; (8) the district court erred in requiring Simmons to pay $250 to the indigent defense fund without a hearing on his ability to pay that amount; (9) the district court erred in denying Simmons' pretrial writ of habeas corpus; and (10) there was insufficient evidence for a verdict against him. As discussed later in this order within our cumulative error analysis, we conclude that the State presented sufficient evidence for the jury's verdict. But, we do not reach the remaining issues because we reverse on other grounds.

which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.'" *Id.* at 939-40, 125 P.3d at 631 (quoting *Evans v. State*, 112 Nev. 1172, 1186, 926 P.2d 265, 274 (1996)). In contesting the venire's composition, the defendant has the burden of proof and must show a prima facie violation of the fair-cross-section requirement by exhibiting

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Simmons objected to the venire's racial composition, which implicated his Sixth Amendment rights. Rather than giving due consideration to the objection, the district court was inattentive to the possibility of a constitutional right being violated. The district court did not ask Simmons if he could make a prima facie showing of a violation of the Constitution's fair-cross-section requirement, nor did it seek a response from the State. It noted the objection, stated that the selection of the jury venire was random, and moved on without developing a record that would permit this court to address the constitutional issue. As a result, the district court denied Simmons an opportunity for a meaningful review of whether his constitutional rights were violated. We do not address whether the district court's err was reversible error on its own because we conclude that it contributed to the cumulative error that requires reversal, as discussed below.

*Simmons' right to use a peremptory challenge under NRS 175.061(5)*

The district court decided that the alternate jurors would be selected by a lottery system at the conclusion of closing arguments. Simmons objected, arguing that the lottery system prevented him from knowing the alternates' identities in advance, thereby hindering his right to use a peremptory challenge against them under NRS 175.061(5). Relying on *Moore v. State*, 122 Nev. 27, 126 P.3d 508 (2006), the district court determined that the jury selection process did not affect Simmons' substantial rights and overruled the objection.

On appeal, Simmons argues that the district court abused its discretion and committed reversible error in using a lottery system to select alternate jurors at the end of trial. He asserts that the system prevented him from knowing the identity of the alternate jurors in time to use the peremptory challenge that NRS 175.061(5) provides for such jurors.[2]

We review the use of the lottery system for abuse of discretion. *See United States v. Springfield*, 829 F.2d 860, 863-64 (9th Cir. 1987) (reviewing a district court's process for the selection of jurors and the use of peremptory challenges for abuse of discretion). Yet, our review of the statutes that govern juror selection is de novo. *See State v. Lucero*, 127

---

[2]Simmons, in passing and without pertinent authority, concludes that this abuse of discretion was a violation of his Fourteenth Amendment due process rights. We do not address this constitutional argument because Simmons does not cogently argue the purported constitutional violation of NRS 175.061(5), *see Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (providing that this court need not address arguments that have not been cogently made), and because we consider the violation of NRS 175.061(5) as part of the cumulative error that requires reversal.

Nev. ___, ___, 249 P.3d 1226, 1228 (2011) ("[W]e review questions of statutory interpretation de novo."). In interpreting a statute, we effectuate the Legislature's intent, which is first ascertained from the statute's plain meaning. *Id.* In so doing, we do not go beyond the statute's language when it is clear and unambiguous. *Id.*

NRS 175.061(5) clearly provides for a peremptory challenge against an alternate juror and limits the use of that challenge to removing an alternate juror. It states that "[e]ach side is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impaneled." *Id.* It further states that this "additional peremptory challenge[ ] may be used against an *alternate juror only.*" *Id.* (emphasis added).

In *Moore*, the district court violated NRS 175.061(5) when it used a blind-alternate system for selecting alternate jurors that left the alternate jurors' identities unknown until jury selection ended. 122 Nev. at 36, 126 P.3d at 514. Without knowledge of the alternates' identities, the defendant's right to use a peremptory challenge under NRS 175.061(5) was inhibited. *Id.* But because the defendant did not object, the *Moore* court reviewed the statutory violation for plain error and concluded that the blind-alternate system did not violate any of the defendant's substantial rights. *Id.* at 37, 126 P.3d at 514.

Here, much like the blind-alternate system in *Moore*, the lottery system impaired Simmons' right to use a peremptory challenge against an alternate juror under NRS 175.061(5). But, unlike the defendant in *Moore*, Simmons objected. The district court's demand that Simmons state a substantial right that was being harmed likely arose from its misapprehension as to why the *Moore* court focused on

substantial rights in its disposition—plain error review applied to the issue because of the absence of an objection. *See id.* at 36-37, 126 P.3d at 514. Moreover, the district court overlooked the *Moore* court's conclusion that the use of blind alternates violated NRS 175.061(5). *See id.* at 37, 126 P.3d at 514. Hence, the district court's decision here to use its lottery system, despite knowing that it violated NRS 175.061(5), was an abuse of discretion. We do not address whether this abuse of discretion was reversible error on its own because we conclude that it contributed to the cumulative error requiring reversal, as addressed below.

*Cumulative error*

The cumulative effect of errors, which alone could be harmless, "may violate a defendant's constitutional right to a fair trial." *Hernandez v.* State, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002). In evaluating cumulative error, we consider "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

*The issue of guilt*

In determining whether the issue of guilt is close, we start by resolving whether there was sufficient evidence for the jury's verdict. To assess the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006) (alteration in original) (internal quotations omitted).

*Battery and battery with the intent to commit sexual assault*

Under both the battery statute and the battery with the intent to commit sexual assault statute, battery is defined as "any willful and

unlawful use of force or violence upon the person of another." NRS 200.400(1)(a); NRS 200.481(1)(a).[3] The term "use" is singular, thereby signifying that each single use of force or violence is subject to punishment as a battery; the term "any" modifies the word "use," thereby expanding the types of force and violence that are punishable as a battery. *See* NRS 200.400(1)(a); NRS 200.481(1)(a). Hence, the battery statutes' language permits the separate punishment for each unlawful use of force or violence that occurs during a criminal episode.

Smith's and Bolt's testimonies identify two separate acts of battery—one at the crib and one on the bed. Smith and Bolt each testified that Simmons put his hand around Smith's throat and forcibly held her against the crib. This was an unlawful use of force. Thus, Smith's and Bolt's testimonies provided sufficient evidence to support Simmons' conviction of battery. According to Smith's testimony, Bolt broke up this violent altercation, after which the second battery occurred on the bed. Smith testified that after Bolt ended the first altercation, he showered, during which time Simmons forced Smith onto the bed, wrapped his hands around Smith's neck, made her undress, and sexually assaulted her. Thus, after a temporal break that followed the first battery, Simmons committed another unlawful use of force on the bed, which was followed by the sexual assault. Thus, there was sufficient evidence to sustain Simmons' conviction of battery with the intent to commit sexual assault.

---

[3]The 2013 Legislature amended NRS 200.481. 2013 Nev. Stat., ch. 343, § 137, at 80. While the amended language does not appear to change the court's analysis, the appeal is governed by the pre-amendment version of NRS 200.481. *See* NRS 200.481 (2012).

*Sexual assault with the use of a deadly weapon and first-degree kidnapping with the use of a deadly weapon*

One commits sexual assault with the use of a deadly weapon if he or she "subjects another person to sexual penetration, or . . . forces another person to make a sexual penetration on himself or herself . . . against the will of the victim," NRS 200.366(1), and does so by using a deadly weapon. NRS 193.165(1), (5). One commits first-degree kidnapping with the use of a deadly weapon if he or she "willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away a person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person . . . for the purpose of committing sexual assault," NRS 200.310, and does so by using a deadly weapon. NRS 193.165(1), (5). A deadly weapon is an instrument that is "readily capable of causing substantial bodily harm." NRS 193.165(6)(b). Using a deadly weapon includes "conduct which produces a fear of harm or force by means or display of a deadly weapon." *Carr v. Sheriff, Clark Cnty.*, 95 Nev. 688, 690, 601 P.2d 422, 424 (1979).

As to sexual assault with a deadly weapon, Smith testified that Simmons threw her on the bed and threatened to kill her. She further testified that Simmons waived a knife to her face while threatening to use it against her and that she saw Simmons bend over the bed with the knife and resurface without it—thus appearing to have placed the knife under the mattress. The knife was six to eight inches long and was deeply serrated. According to Smith's testimony, despite her not consenting, Simmons sexually penetrated her with his penis. Smith's testimony provided sufficient evidence for the jury to conclude that Simmons displayed a knife to Smith just prior to the nonconsensual sex, thereby using a knife to overcome her will as part of the sexual assault.

Thus, there was sufficient evidence for Simmons' conviction of sexual assault with a deadly weapon.

As to first-degree kidnapping with the use of a deadly weapon, Smith testified that before Simmons' first act of battery, she attempted to leave the studio, but Simmons grabbed her arm and stopped her. She tried numerous times to leave, but Simmons continued to physically prevent her from doing so. Bolt testified that just before the first act of battery, she overheard Simmons threaten to use the knife on Smith. She also testified that the knife was in plain sight because it was on a table. Smith's and Bolt's testimonies provided enough evidence for the jury to conclude that Simmons threatened Smith with a knife that was visible to Smith while Simmons physically kept Smith inside the studio, so as to sexually assault her. Hence, Smith's and Bolt's testimonies provided sufficient evidence to support Simmons' conviction of first-degree kidnapping with the use of a deadly weapon.

*The evidence was not overwhelming*

Although the evidence of guilt was sufficient for the jury's verdict, it was not overwhelming. Smith's testimony provided much of the evidence of Simmons' guilt. Yet, with respect to how long Smith stayed in Bolt's studio, the people who stayed there, Smith's relationship with Simmons, and the timing and order of events, Smith's testimony conflicted with the testimonies of other witnesses. Of particular significance, while Smith denied using methamphetamines when at the studio, Bolt and others testified that Smith used methamphetamines on numerous occasions during that span of time. This use of drugs may account for why there were contradictions between Smith's testimony and the testimony of others. For the purpose of assessing the sufficiency of the evidence for the

SUPREME COURT
OF
NEVADA

(O) 1947A

verdict, we do not weigh the inconsistencies and credibility of Smith's testimony, as that was the province of the jury. *See Nolan*, 122 Nev. at 377, 132 P.3d at 573. But, in concluding that the evidence of guilt was not overwhelming, we acknowledge these inconsistencies and the possibility that Smith's ability to recall the events may have been inhibited by the use of methamphetamines while at the studio.

*The quantity and character of the errors and the gravity of the crimes*

A criminal defendant has a constitutional right to be tried by a fair and impartial jury. U.S. Const. amend. VI; U.S. Const. amend. XIV, § 1; Nev. Const. art. 1, § 3. Hence, the errors below that affected the process for empaneling a fair and impartial jury are concerning.

Peremptory challenges are a "means to the constitutional end of an impartial jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57 (1992). Here, the district court's lottery process clearly violated the law that governs the use of peremptory challenges against prospective alternate jurors. *See* NRS 175.061(5). The district court denied Simmons his statutory right to use a peremptory challenge against alternate jurors and, incidentally, affected his ability to make informed peremptory challenges. *See id.* Thus, the process for empaneling a fair and impartial jury was compromised.

The United States Constitution provides for a defendant's right to a "venire selected from a fair cross section of the community." *Williams v. State*, 121 Nev. 934, 939, 125 P.3d 627, 631 (2005). In this matter, the district court gave inadequate consideration to this constitutional right when Simmons objected to the jury venire's racial composition. This dismissive attitude toward Simmons' objection resulted in a poorly developed record, which precluded a meaningful review of an issue regarding Simmons' constitutional right. We refuse to ignore the

possibility that Simmons' objection had merit and, if the district court had given him the opportunity, that Simmons could have shown such merit on the record.

Although the crimes charged against Nelson were grave, the evidence was not overwhelming, and the errors that compromised the process for selecting a fair and impartial jury were cumulatively substantial. Because Simmons' right and ability to use his peremptory challenges were compromised, and due to the poorly developed record that prevents us from concluding that the selection of the jury venire did not violate Simmons' constitutional rights, we cannot state with confidence "that the verdict would have been the same in the absence of [these] error[s]." *Big Pond v. State*, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985). Thus, we conclude that the cumulative effect of the error requires a reversal of the conviction and warrants a new trial.

For the foregoing reasons, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

cc:  Hon. Doug Smith, District Judge
     Clark County Public Defender
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A