142 Nev., Advance Opinion 14

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MALCOLM MENDELL AUBRY,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 89095<br><br>**FILED**<br><br>FEB 2 6 2026<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder of a victim 60 years of age or older and abuse of an older/vulnerable person resulting in substantial bodily or mental harm or death. Eighth Judicial District Court, Clark County; Carli Lynn Kierny, Judge.

*Reversed and remanded.*

Ewing Law and Willard N. Ewing, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Karen Mishler, Chief Deputy District Attorney, Clark County,
for Respondent.

_____

BEFORE THE SUPREME COURT, PICKERING, CADISH, and LEE, JJ.

 

26-09004

*OPINION*

By the Court, LEE, J.:

This case concerns whether there were errors during appellant Malcolm Aubry's jury trial that constitute grounds for reversal of his conviction. Aubry was convicted of first-degree murder of a victim 60 years of age or older and abuse of an older/vulnerable person resulting in substantial bodily or mental harm or death after the victim was found dead in his apartment. We hold that the district court erred by improperly instructing the jury at trial as to the role voluntary intoxication plays in relation to a not-guilty-by-reason-of-insanity defense. We also clarify that a jury may consider whether a combination of voluntary intoxication and a disease or defect of the mind resulted in insanity, but voluntary intoxication alone may not be the cause of the disease or defect of the mind. The record indicates that Aubry preserved the issue, and the error was not harmless. We therefore reverse and remand on this ground.

We also hold that while Aubry was not prejudiced thereby, it was error for a replacement medical examiner to deviate from her predecessor's testimony regarding the victim's cause of death as articulated at the preliminary hearing without notifying the defense of the change. Expanding the possible causes of death during trial violated the notice requirements of NRS 174.234.

*FACTS AND PROCEDURAL HISTORY*

In March 2018, a cable company employee knocked on the door of Aubry's apartment. Aubry answered the door with blood on his face, neck, and clothing and asked the employee to call the police, stating he got into an incident with his girlfriend. When officers arrived, they found the victim, Debra Shirron, lying in bed, dead, with blood and bruises on her



face. Aubry was charged with first-degree murder of a victim 60 years of age or older and abuse of an older person resulting in substantial bodily harm or death.

Dr. Leonard Roquero performed an autopsy on Shirron and testified at the preliminary hearing that her death was caused by blunt force trauma to the head. The case proceeded to trial, where Aubry represented himself and testified in his own defense, simultaneously claiming legal insanity and self-defense. According to Aubry, about three weeks before Shirron's death, an individual attacked him and hit him on the head with a brick three times. This caused Aubry to briefly black out, after which he was taken to an urgent care facility where he received treatment. Aubry testified that in the weeks following the injury, he suffered from headaches and recurring dreams of being attacked. The night before the murder, both Shirron and Aubry consumed half a pan of marijuana brownies. When Aubry woke up the next morning, he had no memory and had difficulty moving. He went to Shirron's room and blacked out, and when he returned to consciousness, he had blood on his hands and Shirron was on the bed motionless.

The State called Dr. Stacey Simons, a medical examiner with the county coroner's office, to testify concerning the results of the autopsy performed by Dr. Roquero and provide her expert opinion on the cause and manner of Shirron's death. Dr. Simons's testimony was initially consistent with that of Dr. Roquero—the victim was killed by blunt force trauma. However, the State then asked Dr. Simons if a pillow pictured in the crime scene photographs could have been used to suffocate the victim, and if the victim's wounds were consistent with strangulation. Dr. Simons responded in the affirmative to both questions.

In presenting his defense, Aubry called Dr. James Loong, a forensic neuropsychologist, to testify whether Aubry was legally insane at the time of the murder. Dr. Loong testified that he performed an MRI on Aubry about 5½ months after the incident in which Aubry was attacked and hit in the head with a brick. Dr. Loong concluded that the MRI indicated that Aubry had suffered traumatic brain injury, which he said likely resulted from the attack. Dr. Loong testified that this injury likely predisposed Aubry to a loss of control and impulsivity. Dr. Loong also opined that because Aubry's cannabis consumption over the years had never produced violent behavior, it was likely a combination of the cannabis intoxication and the traumatic brain injury that caused Aubry's violent behavior.

Dr. Loong further testified that he believed Aubry was suffering from a delusion at the time of the killing, caused by the combination of his traumatic brain injury and ingestion of the cannabis brownies. In Dr. Loong's view, Aubry was reacting to an internal delusion that caused him to be afraid, confused, and scared, even though there were no objective reasons to have those feelings. Based on this, Dr. Loong opined that Aubry was legally insane at the time of the alleged offense. This was disputed by the State's neuropsychologist, who testified that Aubry's mild traumatic brain injury did not result in delusions, that any delusions Aubry experienced were attributable to cannabis consumption alone, and that Aubry was sane at the time of the incident.

At the close of trial, the district court discussed the proposed jury instructions with the parties. Aubry objected to the proposed text of jury instruction 17 concerning voluntary intoxication. He argued the instruction was contrary to law and in conflict with jury instruction 11,

which concerned the legal definition of not guilty by reason of insanity. The court concluded otherwise, and Aubry submitted to the court's ruling but preserved his objection. During closing arguments, the State reiterated this instruction to the jury three times. The jury found Aubry guilty on both counts. Aubry now appeals. We reverse and remand.

## DISCUSSION

On appeal, Aubry alleges that the district court committed numerous reversible errors. Because the defective jury instruction constitutes reversible error, we do not discuss the remaining alleged errors, with the exception of Dr. Simons's testimony, as such is instructive on remand.

*The district court incorrectly instructed the jury*

Aubry argues the voluntary intoxication language in jury instruction 17 is erroneous because it is incompatible with the legal definition of insanity in NRS 174.035 and jury instruction 11. Aubry objected to jury instruction 17 but did not object to jury instruction 11.

"The district court has broad discretion to settle jury instructions . . . ." *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001). Accordingly, we review a district court's decision to give or not give a specific jury instruction for an abuse of discretion or judicial error. *Newson v. State*, 136 Nev. 181, 185, 462 P.3d 246, 249 (2020). However, "we review de novo whether a particular instruction . . . comprises a correct statement of the law." *Cortinas v. State*, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008).

Under NRS 174.035(6), the defendant bears the burden of proving that they are not guilty by reason of insanity. Specifically, the defendant must establish by a preponderance of the evidence that:

(a) Due to a disease or defect of the mind, the defendant was in a delusional state at the time of the alleged offense; and

(b) Due to the delusional state, the defendant either did not:

(1) Know or understand the nature and capacity of his or her act; or

(2) Appreciate that his or her conduct was wrong, meaning not authorized by law.

*Id.* NRS 174.035(10)(a) defines a disease or defect of the mind as "not includ[ing] a disease or defect which is caused *solely* by voluntary intoxication." (Emphasis added.)

Jury instruction 17 reads as follows:

In considering a defense of not guilty by reason of insanity, the jury may not consider a defendant's voluntary drug use or intoxication at the time of his crime in combination with any alleged mental disease or defect in determining whether the defendant was unable to appreciate the nature and quality or wrongfulness of his acts. Rather, in order to satisfy the requirements of [legal insanity], the defendant has to demonstrate that his mental disease or defect *alone* prevented him from appreciating the nature and quality of his acts. Defendant's voluntary intoxication does not preclude him from asserting a Not Guilty by Reason of Insanity defense, *so long as the intoxication did not contribute to his insanity.*

(Emphases added.) Aubry argues that the emphasized language in instruction 17 is not consistent with NRS 174.035(10)(a) and that voluntary intoxication may be considered by the jury as a contributing factor to an insanity defense.

Also relevant here is jury instruction 11, which reads:

All persons are liable to punishment except those who committed the act charged in a state of

insanity. To qualify as being legally insane, a defendant, due to a disease or defect of the mind, must:

    1. Have been in a delusional state at the time of the offense such that he could not know or understand the nature and capacity of his act; or

    2. Have been in a delusional state at the time of the offense such that he could not appreciate the wrongfulness of his act.

    If a defendant was suffering from a delusional state and if the facts as he believed them, while in that delusional state, would have justified his action, he is insane and entitled to an acquittal. If, however, the delusional facts would not amount to a legal defense, then he is not insane.

    "Wrongfulness" means that the act is not authorized by law.

    *As used in this instruction, a "disease or defect of the mind" does not include a disease or defect which is caused solely by voluntary intoxication.*

(Emphasis added.)

Aubry is correct. Jury instruction 17 explained to the jury that Aubry was precluded from raising a not-guilty-by-reason-of-insanity defense if his voluntary intoxication contributed to his insanity. This conflicts with both NRS 174.035(10)(a) and jury instruction 11 (which substantively mirrors the statutory language), providing that a disease or defect of the mind cannot be caused *solely* by voluntary intoxication. By its plain terms, the statute leaves open the possibility that a disease or defect of the mind may arise in conjunction with voluntary intoxication, so long as voluntary intoxication is not the sole cause of the disease or defect.

In the proceedings below, the district court concluded that *Kassa v. State*, 137 Nev. 150, 485 P.3d 750 (2021), and *Love v. State*, No. 52403, 2010 WL 3295682 (Nev. May 28, 2010) (Order of Affirmance),

preclude an insanity defense based on voluntary intoxication and a mental disease. Not so. As the State conceded in its colloquy with the district court below, *Kassa* is not precisely on point here.

In *Kassa*, the defendant objected to a jury instruction that stated, "[n]o act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition. *This is so even when the intoxication is so extreme as to make the person unconscious of what he is doing or to create a temporary insanity.*" 137 Nev. at 156, 485 P.3d at 757 (emphasis in original). This court understood the defendant as arguing that (1) a court should never allow jury instructions to vary from statutory language and (2) the district court should not have permitted any instruction regarding voluntary intoxication and its impact on an insanity defense. *Id.* at 156-57, 485 P.3d at 757. The court rejected those arguments and concluded that the defendant failed to demonstrate any prejudice from the instructions. *Id.* at 157, 485 P.3d at 757. Further, the court recognized that even if there was anything confusing about the allegedly improper jury instruction, context provided by unobjected-to instructions and the State's explanation of the instruction at trial offered sufficient clarification. *Id.* at 157, 485 P.3d at 758.

This is not the case here. Jury instruction 17 plainly contradicts NRS 174.035(10)(a). Further, unobjected-to instructions, like instruction 11, failed to provide clarifying context that mitigated the instructional error. And the State's repetition of the erroneous instruction at Aubry's trial only exacerbated the issue.

*Love* is also distinguishable. There, a defendant challenged an instruction that stated the "effects of voluntary intoxication cannot be considered in evaluating an insanity or involuntary intoxication claim."

2010 WL 3295682, at *3. The district court concluded that "voluntary intoxication combined with a mental disease will not support an insanity defense." *Id.* We reviewed the district court's decision for plain error and, after noting that its decision was "amply supported by caselaw," stated that "[e]ven if there was error—a question we do not decide here—it did not qualify as plain error." *Id.* Here, we are squarely confronted by the issue, as Aubry objected to the defective instruction below. Thus, as this issue requires us to determine whether the jury instruction is a correct statement of the law, we review de novo. *Cortinas*, 124 Nev. at 1019, 195 P.3d at 319. We now clarify that it is error to instruct a jury that it may not consider a defendant's voluntary intoxication within the context of an insanity defense. The jury may consider whether a combination of voluntary intoxication and a disease or defect of the mind resulted in insanity, but voluntary intoxication alone may not be the cause of the disease or defect of the mind. Accordingly, we hold that jury instruction 17 misstates the law.

*The instructional error was not harmless*

This court evaluates appellate claims concerning defective jury instructions using a harmless error standard of review. *Tavares v. State*, 117 Nev. 725, 732-33, 30 P.3d 1128, 1132-33 (2001). Where, as here, an error is not of a constitutional dimension, we will not reverse unless we can conclude that the error had substantial effect on the jury's verdict. *See id*; *Mathews v. State*, 134 Nev. 512, 517-18, 424 P.3d 634, 639-40 (2018). The State bears the burden of proving that an error is harmless. *Belcher v. State*, 136 Nev. 261, 262, 464 P.3d 1013, 1019 (2020).

The State argues that nothing indicates the jury relied on the disputed instructions, and that in light of the overwhelming evidence against Aubry, the jury most likely did not find his insanity defense credible. As noted, Dr. Loong testified that Aubry suffered from a disease

or defect of the mind that was caused by the combination of his traumatic brain injury and voluntary intoxication via the cannabis brownies. Dr. Loong also testified that this disease or defect of Aubry's mind caused him to enter a delusional state, where he believed that he was being attacked, and kill Shirron as a result. Therefore, in Dr. Loong's expert opinion, Aubry was legally insane at the time of the killing.

From this evidence, a jury could have found that Aubry met his burden of proof as to his insanity defense, absent the erroneous instruction. But because the instruction informed the jury that it could not find a disease or defect of the mind where voluntary intoxication was a contributing factor, the jury was foreclosed from finding that Aubry met the burden to establish his defense. And as Aubry points out, the State repeated the erroneous instruction several times in its closing argument. Because of this, we are not convinced that the jury's verdict was not attributable to the erroneous instruction. Thus, the State failed to carry its burden to show that the error was harmless.

*The State failed to comply with NRS 174.234*

Aubry additionally argues that the State failed to comply with NRS 174.234 because Dr. Roquero testified at the preliminary hearing that Shirron's cause of death was blunt force trauma, but Dr. Simons opined at trial that asphyxia may also have been a contributing factor. Although this issue is ultimately not dispositive of the appeal, we consider it in order to clarify the law and to provide necessary guidance. Aubry failed to object at trial, so we review for plain error. *See Newman v. State*, 132 Nev. 340, 344, 373 P.3d 855, 858 (2016) ("When a party fails to object to a trial court error, appellate review is precluded unless the error was plain.").

NRS 174.234(2) states:

> If the defendant will be tried for one or more offenses that are punishable as a gross misdemeanor or felony and a witness that a party intends to call during the case in chief of the State or during the case in chief of the defendant is expected to offer testimony as an expert witness, the party who intends to call that witness shall file and serve upon the opposing party, not less than 21 days before trial or at such other time as the court directs, a written notice containing:
>
> > (a) A brief statement regarding the subject matter on which the expert witness is expected to testify and the substance of the testimony;
> >
> > (b) A copy of the curriculum vitae of the expert witness; and
> >
> > (c) A copy of all reports made by or at the direction of the expert witness.

NRS 174.234(3)(a)-(b) further imposes a continuing obligation to inform opposing parties regarding additional witnesses they intend to call at trial or "[a]ny information relating to an expert witness that is required to be disclosed pursuant to subsection 2."

Dr. Simons's testimony at trial suggested that strangulation and asphyxia may have been contributing causes of death, whereas her predecessor, Dr. Roquero, testified during the preliminary hearing that the death was caused by blunt force trauma. The State's notices under NRS 174.234 merely indicated that the testifying coroner was expected to testify regarding the cause and manner of death of the victim. Dr. Simons's testimony expanded on the substance of that provided by Dr. Roquero by stating that Shirron's death could also be attributed to strangulation and asphyxiation. The State thus presented expert testimony at trial that substantially differed from what it provided at the preliminary hearing

without properly disclosing it to Aubry, in violation of the notice requirements of the statute.

In order for this to constitute reversible error, Aubry must establish that the violation affected his substantial rights. Usually, a party must show that an error was prejudicial to establish that it affected the party's substantial rights. *Moore v. State*, 122 Nev. 27, 37, 126 P.3d 508, 514 (2006). Aubry fails to do so here. Aside from conclusory assertions that the fact of the error itself requires reversal, Aubry asserts that he was prejudiced due to the emotional reaction to the asphyxiation testimony. This is not the degree of prejudicial harm needed to demonstrate plain error.

Alternatively, Aubry suggests for the first time in his reply brief that he was prejudiced because the change in testimony resulted in a trial by ambush or unfair surprise. We have stated that an argument raised for the first time in a reply brief is deemed waived. *See Khoury v. Seastrand*, 132 Nev. 520, 530 n.2, 377 P.3d 81, 88 n.2 (2016). Even if this argument was not waived, Aubry fails to clearly indicate how he was prejudiced by the testimony or how he would have proceeded differently absent the alleged violation of the disclosure requirements. Accordingly, because Aubry has not shown that the lack of disclosure prejudiced his substantial rights, he has failed to demonstrate plain error.

## CONCLUSION

The district court erroneously instructed the jury as to the proper role of voluntary intoxication in relation to a not-guilty-by-reason-of-insanity defense. The plain language of NRS 174.035 permits a jury to consider voluntary intoxication as a contributing factor in determining insanity at the time of a crime, so long as it is not the only factor. Jury instruction 17, which instructed the jury that it could not consider Aubry's insanity defense if voluntary intoxication played any role in his ability to

appreciate the nature or wrongfulness of his actions, was a material misstatement of the law. Further, the State failed to demonstrate the instructional error was harmless. Accordingly, we reverse and remand. For instructional purposes, we note that the presentation of expert testimony at trial different from what was originally testified to at a preliminary hearing, without notice to the defense, violates NRS 174.234.

_____, J.
Lee

We concur:

_____, J.
Pickering

_____, J.
Cadish